**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

GREAT NORTHERN INSURANCE CO.,              )
                                Plaintiff,              )
                                        )
                v.              )              Case No. 1:07-cv-01804-EGS
                                        )
JOEL HIRSCH and CAROL HIRSCH,              )
                          Defendants.              )
                                        )
_____)

**ANSWER AND COUNTERCLAIMS OF DEFENDANTS AND**
**COUNTERCLAIM-PLAINTIFFS JOEL AND CAROL HIRSCH**

     Defendants, Joel and Carol Hirsch, by counsel, hereby provide the following Answer to

Plaintiff's Complaint and, with knowledge as to their own acts, or otherwise on information and

belief, set forth the following Affirmative Defenses and Counterclaims:

**ANSWER**

     Joel and Carol Hirsch admit, deny or otherwise respond to the numbered allegations of

Plaintiff's Complaint as follows:

**The Nature of This Action**

     1.     The first sentence of the first paragraph consists of Plaintiff's characterization of

its action and states a legal conclusion to which no response is required.  If, however, a response

is required, the characterization is denied, except that the Defendants admit that Joel and Carol

Hirsch are spouses and are insureds under the "Masterpiece Deluxe" Insurance Policy purchased

by Joel Hirsch.  The second sentence of the first paragraph consists of Plaintiff's characterization

of its action and states a legal conclusion to which no response is required.  If, however, a

response is required, the characterization is denied.

2.      The first sentence of the second paragraph is admitted in part but otherwise denied.  Joel Hirsch admits that he submitted numerous documents to Great Northern to support the Hirschs' claim under their Masterpiece Deluxe Insurance Policy for water damage sustained earlier that year and that the Hirschs did sustain water damage to their home, the insured residence.  The remainder of this paragraph consists of Plaintiff's characterizations of certain documents and Defendants rely on the documents referenced therein to speak for themselves.

3.      Defendants Joel and Carol Hirsch are without knowledge or information sufficient to form a belief as to the truth of the averments set forth in the first sentence of the third paragraph and thus the same are denied.  The remainder of the third paragraph is denied.

4.      The entirety of the fourth paragraph consists of Plaintiff's characterization of its action and states legal conclusions to which no response is required.  If, however, a response is required, all of the averments of the paragraph are denied.

### The Parties

5.      Admitted upon information and belief.

6.      Admitted.

7.      Admitted.  Joel Hirsch currently serves as the President of the Public Risk Division with Arrowhead Insurance Agency, Inc., and has previously held positions with other companies in the insurance industry.

### Jurisdiction and Venue

8.      Admitted.

9.      Admitted.

**The Policy**

10.     Admitted that Great Northern issued homeowner's insurance policy number 11833276-02, a Masterpiece Deluxe Insurance Policy, to Joel Hirsch and that the policy covers and provides insurance against "all risk of physical loss" for the Hirschs' home and contents. As to the remainder of the averments in the tenth paragraph, Defendants rely on the document referenced therein to speak for itself.

11.     Admitted that Joel and Carol Hirsch are insureds under the policy. As to the remainder of the averments in the eleventh paragraph, Defendants rely on the document referenced therein to speak for itself.

**The 2006 Claim**

12.     Defendants rely on the document referenced in paragraph twelve to speak for itself.

13.     As to the first sentence of the thirteenth paragraph, Joel Hirsch admits that he notified Great Northern on or about June 26, 2006, that, on June 25, 2006, a storm caused damage to the Hirschs' home and its contents and made a claim under his Masterpiece Deluxe Insurance Policy, otherwise the documents speak for themselves. The second sentence of the thirteenth paragraph consists of Plaintiff's characterizations of its action and states a legal conclusion to which no response is required. If, however, a response is required, the characterizations are denied.

14.     As to the first sentence of the fourteenth paragraph, it is admitted that Joel Hirsch submitted to Great Northern a series of invoices and estimates from contractors, consultants, and appraisers, schedules of damaged personal property, and other documents and information. With regard to the second sentence of the fourteenth paragraph, the Hirschs admit that the insured

3

property was damaged by a storm on June 25, 2006.  The remainder of the second sentence states a legal conclusion to which no response is required.  If, however, a response is required, the averments are denied.  Further, the Hirschs rely on the documents referenced in paragraph fourteen to speak for themselves.

15.     Defendants Joel and Carol Hirsch are without knowledge or information sufficient to form a belief as to the truth of the averment set forth in the first sentence of the fifteenth paragraph and thus the same is denied except that Defendants admit that Great Northern paid the Hirschs a total of $280,065.39 with respect to the 2006 Claim.  As to the second sentence of the fifteenth paragraph, the Hirschs admit that a claim for damage sustained to the jointly and separately owned property of Carol Hirsch was submitted to and paid by Great Northern.

16.     The entirety of the sixteenth paragraph is denied.

17.     As to the first sentence of paragraph seventeen, Joel Hirsch admits that he sent Great Northern information about certain decorative doors, but denies that he ever sent Great Northern an "invoice" for the repair and value of the doors.  As to the second through fourth sentences of this paragraph, Defendants rely on the documents referenced therein to speak for themselves and Plaintiff's characterizations of same are denied.  As to the last sentence of this paragraph, Joel Hirsch admits that he initially sought coverage for this aspect of his loss, however, Joel Hirsch withdrew this claim for coverage in October 2006 and Great Northern never paid Defendants any monies for this aspect of their loss.  All other averments in this paragraph are denied.

18.     As to the first and second sentences of paragraph eighteen, Defendants rely on the documents referenced therein to speak for themselves and Plaintiff's characterizations of same are denied.  As to the last sentence of this paragraph, Joel Hirsch admits that he initially sought

coverage for this aspect of his loss; however, Joel Hirsch withdrew this claim for coverage in October 2006 and Great Northern never paid Defendants any monies for this aspect of their loss. All other averments in this paragraph are denied.

19.     Defendants rely on the documents referenced in the nineteenth paragraph to speak for themselves and Plaintiff's characterizations of same are denied.  All other averments in this paragraph are denied.

20.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averment set forth in the first sentence of the twentieth paragraph and thus the same is denied.  Plaintiff has not provided the Hirschs with copies of any statements made under oath by Frischling or anyone else.  The second sentence of the twentieth paragraph is denied.

21.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments set forth in the twenty-first paragraph and thus the same are denied. Plaintiff has not provided the Hirschs with copies of any statements made under oath by Wentworth or anyone else.

22.     The entirety of the twenty-second paragraph is denied.

23.     The first sentence of the twenty-third paragraph consists of Plaintiff's characterization and states a legal conclusion to which no response is required.  If, however, a response is required, the characterization and allegation are denied.  The second sentence of the twenty-third paragraph is denied.

24.     The first sentence of the twenty-fourth paragraph is admitted in part but otherwise denied:  With the knowledge and approval of Great Northern, Joel Hirsch hired Eight Brothers Company and Juenemann Painting to assist in the repair of the extensive storm damage to his home.  As to the remainder of the averments in the twenty-fourth paragraph, Defendants rely on

the documents referenced therein to speak for themselves and deny Plaintiff's characterizations of same.  All other averments in this paragraph are denied.

25.     Defendants Joel and Carol Hirsch are without knowledge or information sufficient to form a belief as to the truth of the averment set forth in the first sentence of the twenty-fifth paragraph and thus the same is denied except that Defendants admit that Great Northern paid Hirsch a total of $280,065.39 with respect to the 2006 Claim, some portion of which covered invoices that were submitted by Juenemann Painting and reviewed and approved by Great Northern.  Defendants Joel and Carol Hirsch are without knowledge or information sufficient to form a belief as to the truth of the averments set forth in the second sentence of the twenty-fifth paragraph and thus the same are denied.

26.     Admitted.

27.     The Defendants rely on the documents referenced in paragraph twenty-seven to speak for themselves and deny Plaintiff's characterizations of same.  All other averments in this paragraph are denied.

28.     Denied.

29.     The first sentence of the twenty-ninth paragraph is admitted in part:  Joel Hirsch sought payment for damage sustained by Carol Hirsch's clothing and Great Northern paid Defendants a total of $280,065.39 with respect to the 2006 Claim, some portion of which covered damage sustained by Carol Hirsch's clothing.  The second sentence of the twenty-ninth paragraph is admitted.  All other averments in paragraph twenty-nine are denied.

30.      Denied.

31.     Defendants Joel and Carol Hirsch are without knowledge or information sufficient to form a belief as to the truth of the averments set forth in the first two sentences of the thirty-

first paragraph and thus the same are denied.  The third sentence of the thirty-first paragraph is denied.

32.     Admitted that some of the correspondence referenced in paragraph thirty-two made some of the requests referenced in paragraph thirty-two, but Defendants rely on the documents referenced in the paragraph to speak for themselves.  To the extent a response is required, the averments in paragraph thirty-two are denied.

33.     The thirty-third paragraph is admitted in part and denied in part.  Joel Hirsch and Carol Hirsch provided all requested records and documents to Great Northern from the time they reported the loss on June 26, 2006, until their submitted claim had been essentially paid in full and resolved in November 2006.  Only after the claim as submitted had been paid and the Hirschs had used the $280,065.39 to repair their home and replace or repair its contents did Great Northern begin to demand that the Hirschs be examined under oath, authorize Great Northern to inspect and copy documents in the possession of third parties, and provide sworn proofs of loss.  Because Great Northern had already paid the claim without reserving its rights to this additional documentation (or on any other ground), the Hirschs did not provide Great Northern with examinations under oath, authorizations for Great Northern to inspect and copy documents in the possession of third parties, or sworn proofs of loss.

34.     Denied.  Moreover, these allegations are vague and ambiguous.

35.     Denied.

## Count I

36.     Defendants Joel and Carol Hirsch incorporate their responses to paragraphs 1 through 35, as if set forth fully herein.

37.     Denied.

38.     Denied (including subparagraphs (a) and (b)).

## Count II

39.     Defendants Joel and Carol Hirsch incorporate their responses to paragraphs 1 through 38, as if set forth fully herein.

40.     Denied (including subparagraphs (a) through (d)).

41.     Denied (including  subparagraphs (a) and (b)).

## Count III

42.     Defendants Joel and Carol Hirsch incorporate their responses to paragraphs 1 through 41, as if set forth fully herein.

43.     Denied.

44.     Denied (including subparagraphs (a) and (b)).

## General As To All Allegations

45.     Further answering the Complaint, Defendants Joel and Carol Hirsch deny each and every allegation not specifically admitted or otherwise answered.  Defendants Joel and Carol Hirsch deny that Plaintiff is entitled to the relief requested in its Prayer for Relief or to any relief.

## AFFIRMATIVE DEFENSES

46.     Defendants Joel and Carol Hirsch incorporate into each of their affirmative defenses by this reference each of all of the allegations contained in their Counterclaims herein.

## First Affirmative Defense

47.     Plaintiff has failed to state a claim upon which relief can be granted.

## Second Affirmative Defense

48.     Plaintiff's claim is barred, in whole or in part, by the doctrine of estoppel.

### Third Affirmative Defense

49.    Plaintiff's claim is barred, in whole or in part, by the doctrine of waiver.

### Fourth Affirmative Defense

50.    Plaintiff's claim is barred, in whole or in part, by the doctrine of accord and satisfaction.

### Fifth Affirmative Defense

51.    Plaintiff's claim is barred, in whole or in part, by the doctrine of unclean hands.

### Sixth Affirmative Defense

51.    Plaintiff's claim is barred, in whole or in part, by the terms of the policy that is the subject of its claim.

### Seventh Affirmative Defense

52.    Plaintiff's claim is barred because a judgment in Plaintiff's favor would result in the unjust enrichment of Plaintiff.

WHEREFORE, Defendants Joel and Carol Hirsch request that the Complaint be dismissed, and that a judgment be entered in their favor, including the relief requested in their Counterclaims, as well as their costs and attorneys' fees, and such other relief as the Court deems just.

### COUNTERCLAIMS

### Nature of the Action

1.    This action arises from the unfair claims-handling practices, waivers, breaches of duty, and breaches of contract engaged in by Great Northern Insurance Company ("Great Northern") in connection with Joel and Carol Hirsch's 2006 claim under their Masterpiece Deluxe Homeowners Insurance Policy.  Great Northern's conduct was intended to cause and/or

did cause the Hirschs to rely to their detriment on Great Northern's conduct, representations, and payment of the claim.

2.      After a storm caused severe damage to their home on June 25, 2006, Joel and Carol Hirsch timely notified Great Northern of their claim under their Masterpiece Deluxe Insurance Policy and promptly provided all documentation requested by Great Northern's claims-handler, Larry Babinski.  Mr. Babinski handled the claim and obtained approval by his superior(s) at Great Northern to pay the Hirschs' claim, as promised in the Hirschs' Masterpiece Deluxe Insurance Policy.  After paying the Hirschs' $280,065.39, which represented essentially all of the Hirschs' claim at that point, a new claims handler, Daniel Jaeger entered the picture. Great Northern suddenly began demanding additional documentation and engaged in a pattern of harassing and hounding Joel and Carol Hirsch about items immaterial to their claim and for which Great Northern had never paid the Hirschs or reserved rights.  Great Northern now seeks to void the Hirschs' Masterpiece Deluxe Insurance Policy in its entirety and recover all of the monies it paid to the Hirschs for the severe damage to their home and its contents, despite the fact that this money was paid by Great Northern with no reservation of rights and has been spent by the Hirschs to repair their home and replace its contents.

3.      Great Northern never denied coverage or issued any reservation of rights but instead, paid the claim and knew that the Hirschs used the money to repair the extensive and undisputed damage to their home and its contents.

4.      Great Northern's egregious conduct is contrary to the standards set forth in District of Columbia law for insurers, who owe fiduciary duties to their insureds, and who must act in good faith and deal fairly with insureds.  Great Northern's conduct toward the Hirschs was intentional and/or reckless and has caused the Hirschs severe emotional distress.  Great

Northern's conduct also constitutes a violation of the District of Columbia's Consumer Protection Procedures Act. Additionally, Great Northern has breached its contract with the Hirschs.

### The Parties

5.     Defendants-Counterclaim-Plaintiffs Joel and Carol Hirsch are the owners of the home at 3115 Cleveland Avenue, N.W., Washington, DC, that was insured under Great Northern's Masterpiece Deluxe Insurance Policy, Number 11833276-02.

6.     Great Northern Insurance Company is a corporation duly organized under the laws of the State of Minnesota, with its principal place of business located at 15 Mountain View Road, New Jersey. Great Northern Insurance Company is a subsidiary of the Chubb Group of Insurance Companies ("Chubb"). Great Northern issued Masterpiece Deluxe Policy Number 11833276-02 to Joel Hirsch for coverage of the Hirschs' home at 3115 Cleveland Avenue, N.W., Washington, DC, for the period June 21, 2006 to June 21, 2007, in the event the home or its contents were damaged, destroyed, or lost.

### Jurisdiction and Venue

7.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.     Venue is proper is this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claim took place in this District, and the property that is the subject of the action is situated in this District, and because Great Northern is subject to personal jurisdiction in this District.

## The Policy

9.      Joel Hirsch has purchased his homeowners and automobile insurance through the Chubb Group of Insurance Companies for more than 20 years.  Hirsch has always timely paid his premiums due on the policies.  Upon information and belief, Hirsch has paid Chubb more than $200,000 in premiums for insurance coverage over the years.

10.     Joel Hirsch has held the Masterpiece Deluxe Insurance Policy, Number 11822276-02, since June 2000.  He has timely paid all premiums due on the policy.  Between June 2000 and March 2007, the Hirschs paid a total of $71,573 to Great Northern for coverage under this specific insurance policy.  No premiums have been refunded to the Hirschs.

11.     Policy Number 11822276-02 is a "Chubb Masterpiece Policy."   This policy includes "Deluxe House Coverage" and "Deluxe Contents Coverage."  Deluxe House Coverage covers "all risk of physical loss" to the home and Deluxe Contents Coverage likewise covers "all risk of physical loss" to the contents of the home.

12.     Masterpiece Deluxe Insurance Policy Number 11822276-02 provides that it may be voided only in the event that a covered person "intentionally concealed or misrepresented any material fact relating to this policy before or after a loss."

13.     Masterpiece Deluxe Insurance Policy Number 11822276-02 does not state that it may be voided in the event an insured does not submit to an examination under oath, provide authorizations for Great Northern to obtain documents from third parties, or provide a sworn proof or loss, or for any other reason.

14.     In promotional materials the Hirschs received from Chubb regarding their Great Northern insurance policy, Chubb asserted that in the event of a loss, it "is committed to restoring your home to its original beauty."  These advertisements and marketing materials

12

issued by Chubb further stated that Chubb insurers "knows their insureds don't like to quibble – neither do they." Chubb also advertised its insurers' "[h]assle-free claim service in time of crisis." The Hirschs relied on these representations.

15.     The Hirschs purchased Great Northern's Masterpiece Deluxe Insurance Policy in part based on the representations made at the time of purchase and each year on renewal regarding Chubb's claims-handling service, such as the representation that: "The ultimate test of any insurance company is how it handles claims. Since 1882, Chubb [the parent company of Great Northern] has been known for promptness, fairness, and integrity in settling claims. . . . We make every effort to contact you within 24 hours of receiving your claim and strive to issue payment within 48 hours of a settlement."

16.     The Hirschs also relied on the representation from Chubb regarding their Great Northern insurance policy that: "When you purchase an insurance policy, you purchase a promise – Chubb's promise to fulfill our end of the insurance bargain and provide you with claim service that is world class." And they further relied on representations that: "Too often, the word integrity is used in a casual manner, greatly diminishing the importance of this value. At Chubb, we believe that conducting business in an honorable fashion is our highest priority."

**The Claim's History**

17.     On June 25, 2006, record-breaking rainfall in Washington, DC, caused severe and undisputed water damage to the Hirschs' home at 3115 Cleveland Avenue, N.W., and to its contents.

18.     Joel Hirsch reported this damage to his insurance broker, Roni Tibbe at Aon Private Risk Management late on June 25, 2006. Joel Hirsch then reported the damage directly to Great Northern via a report made to Tracy Smith at Chubb's toll-free claims phone number on

June 26, 2006.  Hirsch made a timely claim under his Masterpiece Deluxe Insurance Policy for coverage of the extensive loss.

19.    Great Northern assigned adjuster Larry Babinski to the claim.  Great Northern also hired an outside company, First Call, to work on remediation of the extensive damage to the home.

20.    Shortly thereafter, Mr. Babinski visited the Hirschs' home to assess the damage. After the visit, Mr. Hirsch sent Mr. Babinski several photographs of items Mr. Babinski did not see on his visit, including pictures of damage to a set of decorative doors.  Mr. Babinski at no time disputed the damage, denied coverage, or reserved any rights for Great Northern.

21.    On July 2, 2006, following his visit to the Hirschs' home, Mr. Babinski sent Mr. Hirsch an email stating that he had "discussed [the Hirschs'] loss with [his] supervisor and advised [the supervisor that] the damages were quite severe.  [The] loss involves damage on multiple floors and specialty items such as plaster moldings in the living room.  To assist in the assessment of your damages, it was decided to use a construction consultant.  The consultant is Chris Haven of Minkoff Construction."

22.    Mr. Hirsch sent Mr. Babinski emails throughout the month of July apprising him that he had not yet been contacted by Mr. Haven or Minkoff Construction and that Mr. Hirsch had enlisted a contractor – Eight Brothers – who specialized in plaster restoration, to provide an estimate of the cost to repair the extensive damage to the plaster in the Hirschs' home, their primary residence.  Mr. Hirsch provided this estimate, which was $147,529, to Mr. Babinski and repeatedly requested authorization for Eight Brothers to begin this work, but initially received no response from Mr. Babinski.

23.     Mr. Hirsch also advised Mr. Babinski that both Eight Brothers and Juenemann Painting had advised him to have the canvas removed from the walls and ceilings as soon as possible so as not to further damage the plaster and to avoid a risk of mold.  Mr. Babinski did not object to removal of the canvas, and the Hirschs relied on that lack of objection.

24.     On July 18, 2006, Mr. Hirsch wrote to his insurance broker Ms. Tibbe at Aon Private Risk Management, three weeks after the "severe" damage, and complained about the lack of response from Mr. Babinski.

25.     On July 19, 2006, Great Northern issued check number 2508959 in the amount of $50,000 to Joel Hirsch.  This check did not include any reservations of rights and Great Northern never asserted that payment of this check was subject to further investigation of the Hirschs' claim or to the Hirschs' submission of sworn proofs of loss or examinations under oath.  Mr. Hirsch therefore used the money from this check to pay for the repair of his home.   Mr. Babinski was aware that Mr. Hirsch used the money from this check to pay for the repair of his home.

26.     Also on July 19, 2006, Mr. Babinski called Mr. Hirsch and agreed to send a check to cover the deposit needed for Eight Brothers to begin the plaster restoration work.  On July 28, 2006, Mr. Hirsch advised Mr. Babinski that Eight Brothers had begun the work, and on August 3, 2006, sent Mr. Babinski pictures of the work in progress.  Again, Great Northern made no objection nor reserved any rights.  The Hirschs relied on that lack of objection.

27.     On August 10, 2006, Mr. Hirsch wrote to Mr. Babinski attaching a bill from Classic Floors for the restoration of the hardwood floors.  This bill was for $15,000 pursuant to a proposal that Mr. Hirsch had previously submitted and to which Mr. Babinski had never objected.  Mr. Hirsch also attached a bill from Juenemann Painting for $6,550 for "expedited removing of the canvas on the walls and ceilings."  Mr. Hirsch also stated:  "As I mentioned

when we last spoke, I have hired an architect to assi[s]t us and guide us through the repairs.  His services will be billed at $10,000 for oversight plus fees for any design or additional work."  Again, Great Northern made no objection nor reserved any rights.  The Hirschs relied on that lack of objection.

28.    On August 14, 2006, Mr. Hirsch wrote to Mr. Babinski and sent him an invoice for $78,445 from Eight Brothers for the plaster restoration work.  Mr. Hirsch stated:  "Please let me know if you have any questions and when I can expect a reply to the email I last sent Aug 10 and further payment."  Great Northern raised no questions and reserved no rights.

29.    On August 18, 2006, Mr. Babinski sent Mr. Hirsch a spreadsheet showing all of the documentation Mr. Babinski had received to date for damage to the Hirschs' home and its contents.  Mr. Babinski advised that reimbursement would be forthcoming within a few days.  Mr. Babinski did not indicate that reimbursement was subject to further investigation of the Hirsch's claim or to the Hirschs' submission of sworn proofs of loss or examinations under oath.  The Hirschs relied to their detriment on Great Northern's representations.

30.    On August 23, 2006, Great Northern issued three checks to Mr. Hirsch:  check number 2602155 for $129,104 for "Dwelling"; check number 2599965 for $19,489 for payments to First Call (remediation services); and check number 2599935 for $16,705.61 for "Contents."  None of these checks included any reservations of rights and Great Northern never asserted that payment of these checks was subject to further investigation of the Hirschs' claim or to the Hirschs' submission of sworn proofs of loss or examinations under oath.  Mr. Hirsch therefore used the money from these checks to pay for the repair of his home and the replacement or repair of its contents.  Mr. Babinski was aware that Mr. Hirsch used the money from this check to pay for the repair of his home and the replacement or repair of its contents.

31.     On August 24, 2006, Mr. Hirsch wrote to Mr. Babinski:  "As discussed the other day, we had clothing and accessories in the closets which were water damaged.  Most of these were cleaned or laundered, but some were just too water logged or stained to save.  I originally made a list of those items, and kept them in the garage, but they became qui[te] odorous and we discarded them last weekend as I told you (save for the doors which are still here if you want them)."  Mr. Babinski did not respond to Mr. Hirsch's offer to inspect the doors.

32.     On August 28, 2006, Great Northern issued check number 26932000 to Mr. Hirsch for $28,705 for "Contents."  This check did not include any reservations of rights and Great Northern never asserted that payment of this check was subject to further investigation of the Hirschs' claim or to the Hirschs' submission of sworn proofs of loss or examinations under oath.  Mr. Hirsch therefore used the money from this check to replace or repair the contents of his home.  Mr. Babinski was aware that Mr. Hirsch used the money from this check to pay for the repair of his home and the replacement or repair of its contents.

33.     On September 17, 2006, almost three months after the damage to his home, Mr. Hirsch wrote to Mr. Babinski noting that he had not "received any word from you for the past several weeks" and that he was "wondering what is happening on the open items."  Mr. Hirsch also continued to speak to his insurance broker, Ms. Tibbe at Aon, regarding the lack of action from Mr. Babinksi in resolving and paying for the damage to the Hirschs' home and its contents.

34.     Ms. Tibbe made inquiries of Great Northern and its parent Chubb and informed Mr. Hirsch that it appeared that Mr. Babinski had been "once again procrastinating" on the Hirschs' claim.  Ms. Tibbe requested that Mr. Babinski's immediate supervisor (Jim Hamilton) and the regional supervisor look at the Hirschs' claim every five days to ensure that things were "being handled in a timely manner."  Ms. Tibbe also advised Mr. Hirsch that Mr. Babinski had

been "advised to communicate more effectively with you" and noted that, if this lack of responsiveness continued, the Ms. Tibbe's "next call would be [to someone] much higher up" at Chubb.

35.    On September 27, 2006, Mr. Babinski wrote Mr. Hirsch and included two updated spreadsheets reflecting all of the documentation Great Northern had received from him to date. Mr. Babinski stated that "Payment for the contents has been posted and should be sent out today. I have requested authority to issue payment of $24,036.78 for the supplement[al] dwelling repairs.  I expect payment to be issued by AM of 9-28-08."  Mr. Babinski did not indicate that payments were subject to further investigation of the Hirschs' claim or to the Hirschs' submission of sworn proofs of loss or examinations under oath.  The Hirschs relied on Mr. Babinski's representations.

36.    On September 29, 2006, Great Northern issued check number $24,036.78 for "Dwelling."  This check did not include any reservations of rights and Great Northern never asserted that payment of this check was subject to further investigation of the Hirschs' claim or to the Hirschs' submission of sworn proofs of loss or examinations under oath.  Mr. Hirsch therefore used the money from this check to pay for repairs to his home and its contents.  Mr. Babinski was aware that Mr. Hirsch used the money from this check to pay for the repair of his home and the replacement or repair of its contents.

37.    On October 9, 2006, Mr. Babinski wrote to verify that Mr. Hirsch had received Great Northern's payments and noted that the only additional documentation he appeared to need at that time was an estimate for the repair of the decorative doors.  That same day, Mr. Hirsch responded that "the issue on the doors is that repairs would exceed their value, and there is no need to get into that kind of situation, so I will suggest we agree on the valuation and not worry

18

about their repair." When Mr. Babinski inquired further about the valuation provided for the decorative doors, Mr. Hirsch told Mr. Babinski to disregard it and decided not to press his claim for the valuation. Thus, Great Northern never issued any payment for the decorative doors.

38.     On October 25, 2006, Mr. Babinski also inquired about a proposal from Wentworth, Inc. for project management services for $10,000. Mr. Hirsch told Mr. Babinski that he could also disregard this proposal as Mr. Hirsch did not intend to pursue reimbursement for it. Thus, Great Northern never issued any payment for Wentworth project management services.

39.     On October 23, 2006, Great Northern issued its final check number 2758135 to Mr. Hirsch for $12,025 for "Dwelling." This check did not include any reservations of rights and Great Northern never asserted that payment of this check was subject to further investigation of the Hirschs' claim or to the Hirschs' submission of sworn proofs of loss or examinations under oath. Mr. Hirsch therefore used the money from this check to pay for repairs to his home and its contents. Mr. Babinski was aware that Mr. Hirsch used the money from this check to pay for the repair of his home and the replacement or repair of its contents.

40.     After the issuance of this final check, Mr. Hirsch considered his claim as submitted to be essentially resolved. Great Northern had paid a total of $280,065.39 for the "severe" damage it acknowledged had occurred to the Hirschs' home and its contents. The Hirschs used all of the $280,065.39 to repair or replace their home and its contents. Great Northern never represented to the Hirschs that it was reserving any rights with respect to this payment or that the payment of $280,065.39 was subject to further investigation of the Hirschs' claim or to the Hirschs' submission of sworn proofs of loss or examinations under oath.

41.     Great Northern paid this $280,065.39 based on the claims-handling conducted by Mr. Babinski without ever asking Joel or Carol Hirsch to submit a sworn proof of loss or to submit to an examination under oath.

42.     Joel and Carol Hirsch timely submitted all documentation requested by Great Northern during the claims-handling process and never withheld any information requested by Great Northern.

43.     During its investigation, Great Northern's claims adjuster, Mr. Babinski, asked for further explanation or documentation as to only two of the items in the Hirschs' claim – the decorative doors and the project management services.  Rather than pressing his claim for these items, Mr. Hirsch told Mr. Babinski he could disregard these items.

44.     Great Northern never paid any amount toward any claim for repair or replacement of decorative doors or for project management services.  These items were not and are not material to the Hirschs' claim for damage under their policy.

45.     On December 11, 2006, just as the Hirschs finally were able to begin enjoying the use of their home and its contents again, Dan Jaeger, an investigator from Great Northern, and Chris Haven of Minkoff Construction came to the Hirschs' home and demanded to see and photograph certain items, including the decorative doors.  Mr. Jaeger also requested that Mr. Hirsch submit to a recorded interview, and Mr. Hirsch complied.

46.     In the interview, Mr. Jaeger repeatedly asked Mr. Hirsch about the decorative doors, any claim for which Mr. Hirsch had long since withdrawn.  Mr. Jaeger also repeatedly asked Mr. Hirsch about the proposal from Wentworth, Inc. for project management services, any claim for which Mr. Hirsch had long since withdrawn.

47.    In the interview, Mr. Jaeger disparaged and humiliated Mr. Hirsch, using a

condescending and accusatory tone and implying that Mr. Hirsch was attempting to defraud

Great Northern.

48.    Following this visit from Mr. Jaeger, which caused Mr. Hirsch severe emotional

distress, Mr. Hirsch wrote the following email to Mr. Jaeger on December 11, 2006 (emphasis

added):

> *I am more than shocked by our discussions today.* I don't think it was fair to come here
> with very specific questions that you were not willing to make clear in advance. I think
> our time would have been more productive if I had known in advance what you wanted to
> talk about. *In any event, I have looked at relevant documents and refer you to them now,
> as I would have been able to do while you were here had you made your area of interest
> known to me beforehand.*
>
> My email of 7/3 to Mr. Babinski did include as attachments pictures of the decorative
> doors along with other items. They were not a late addition to the claim, but I regret that
> I handled that the way I did, as *there was no intention except to have recognition of the
> obvious water damage.*
>
> On July 9, before Eight Brothers was engaged, I advised Mr. Babinski that we had
> arranged for our painter to come in to remove the canvas, as we were concerned about
> releasing trapped moisture and the danger of mold. That should not have been a surprise
> to your consultant and was not inappropriate as we had legitimate concerns as it was
> taking time to get the consultant here and Mr. Babinski wanted their report before acting.
>
> On July 14 we received the revised Eight Brothers proposal, which corrected the
> previous[] Eight Brothers quoted price for protection and scheduled charges to repair
> additional areas of damage. *No question was raised by Mr. Babinski about the change in
> price. A copy of the original document is in my file and you are welcome to examine it if
> you wish.*
>
> On Aug 14, I sent a copy of Eight Brothers' document, which shows their charges for
> 'removing' the canvas, which they justified to me (even though another party had
> actually done that) as being because the prior work did not 'adequately' remove the glue,
> which they considered the harder part of the job and the requisite for being able to do
> their repairs. *In any event, I was not aware that I was obliged to reconcile with you work
> they performed with what we had done by others; if there has been a duplication I am
> sure that is not a problem which cannot be sorted out.*

*We have been policyholders for a long time, and my intentions have always been in pursuit of fair play.* While you may not agree, we have acted to try to keep costs in control, and done the best we could under very difficult circumstances.

49.     Mr. Jaeger did not respond to Mr. Hirsch's offers for Great Northern to inspect the original documents in Mr. Hirsch's files, nor did Mr. Jaeger respond to Mr. Hirsch's offer to attempt to reconcile any work that Mr. Jaeger believed had been duplicated.  Instead, Mr. Jaeger responded with a letter on December 14, 2006 (which Mr. Hirsch did not receive until December 26, 2006), stating that Great Northern had referred the matter to an attorney at Cozen and O'Connor for investigation.

50.     On December 28, 2006, Cozen and O'Connor sent Joel and Carol Hirsch a letter demanding that the Hirschs submit a sworn statement in proof of loss and to submit to an examination under oath on January 23, 2007.  The letter further demanded that the Hirschs provide Cozen and O'Connor with extensive documentation no later than January 16, 2007. Among other things, the letter demanded that the Hirschs produce:

> Any and all documentation that verifies or corroborates your whereabouts on June 25, 2006.
>
> A complete, itemized list of all property that you allege was damaged and is the subject of this claim.
>
> A complete list of names and last known addresses of all persons you believe to have personal knowledge of the ownership and/or value of the property which is the subject of this claim.
>
> All <u>original</u> purchase receipts . . . reflecting the purchase and/or current value of <u>all</u> property which is the subject of this claim.
>
> Credit card records for any and all credit cards maintained by Joel and/or Carol Hirsch . . . that reflect all purchases made from January 1, 2006 through the present.
>
> The originals of all estimates, invoices, change orders, permits, receipts, correspondence, or other documents relating to the repair or replacement of all or part of the roof . . . from January 2000 to the present.

These demands were made more than six months after the damage to the Hirschs' home occurred and more than two months after Great Northern had issued its last payment on the claim.

51.     On January 12, 2007, counsel for Mr. Hirsch responded and pointed out that Cozen and O'Connor had a conflict of interest because they had previously represented Mr. Hirsch with respect to a prior claim under the same insurance policy (which Chubb paid). Counsel further objected to the intrusive and unnecessary demands in the December 28, 2006 letter given the payment of $280,065.39 on the claim.

52.     On January 23, 2007, counsel for Mr. Hirsch received a letter from new counsel engaged by Great Northern.  This letter demanded that the same documents listed in the prior letter be produced by February 5, 2007, and further demanded an examination under oath of Mr. Hirsch to take place on February 15, 2007.

53.     By letters dated December 28, 2007, January 23, 2007, February 8, 2007, February 23, 2007, March 14, 2007, April 7, 2007, and May 16, 2007, Great Northern continued to demand that Mr. and Mrs. Hirsch submit sworn proofs of loss, submit to examinations under oath, and provide voluminous documentation.  The Hirschs responded to each of these letters, via counsel, by asserting that Great Northern had waived any rights to its demands for additional documentation by paying their claim.  Mr. Hirsch also responded that all of the moneys paid by Great Northern had been spent to repair the home or replace its contents, as was known to Great Northern at the time the money was spent.

54.     On October 9, 2007, counsel for Great Northern served Mr. Hirsch with the Complaint in this matter, asserting that the Hirschs' policy is void and that the Hirschs must repay the $280,065.39 that Great Northern issued to them in settlement of their claim.

55.    Great Northern thus waited until almost a year after issuing its last check to the Hirschs, knowing that the Hirschs had used all of the payments from Great Northern to repair their home and repair or replace its contents, before asserting that it was denying coverage and never having reserved rights to do so until after the last payment had been made by Great Northern.

56.    As a result of Great Northern's extreme and outrageous conduct in handling their claim so poorly, harassing and haranguing them for additional documentation, and then serving them with a lawsuit to recover monies already spent to repair severe water damages to their home, Mr. and Mrs. Hirsch have suffered severe emotional distress.  They have not been able to sleep, have suffered loss of appetite, have been unable to enjoy the company of family at their home, have been unable to enjoy the full use of their home, and have endured severe stress.  Mrs. Hirsch has had a series of medical issues of unknown etiology related to or aggravated by stress.

## Count I – Breach of Fiduciary Duty

57.    Joel and Carol Hirsch repeat and reallege each and every allegation contained in Paragraphs 1 through 56 as if fully set forth herein.

58.    As their insurer, Great Northern owes Joel and Carol Hirsch a fiduciary duty.

59.    District of Columbia law sets forth the standard of care that insurers as fiduciaries owe their insureds.  This fiduciary duty means that an insurer may not:  unreasonably delay the investigation or payment of claims by requiring both a formal proof of loss form and subsequent verification that would result in duplication of information already in the possession of the insurer; refuse to pay a claim for a reason that is arbitrary or capricious based on all available information; fail to acknowledge and act reasonably promptly upon communication with respect to claims arising under insurance policies; fail to adopt and implement reasonable standards for

the prompt investigation of claims arising under insurance policies; refuse to pay claims without conducting a reasonable investigation; fail to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to the claims; fail to attempt in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear; or attempt to settle a claim for less than the amount to which a reasonable person would believe the insured or beneficiary was entitled by reference to written or printed advertising material accompanying or made part of an application or policy.

60.    Great Northern breached its fiduciary duty to the Hirschs in the following manner:

a.    By engaging in duplicative claim investigation and/or unreasonably delaying the alleged "investigation" forming the basis of Great Northern's complaint until after the Hirschs' submitted claim had already been paid and the moneys spent by the Hirschs to repair their home and repair or replace its contents;

b.    By unreasonably delaying its denial of coverage to the Hirschs until after the claim had already been paid and the moneys spent by the Hirschs to repair their home and repair or replace its contents:

c.    By requiring the Hirschs to submit both a formal proof of loss form and subsequent verification after Great Northern had already paid their claim and that would simply duplicate information Great Northern already had;

d.    By seeking to void the Hirsch's insurance policy for reasons that are arbitrary and capricious;

e.    By failing to acknowledge and act reasonably promptly upon communications from Mr. Hirsch to Mr. Babinski with respect to the claim for coverage;

f.      By failing to acknowledge and act reasonably promptly upon communications from Mr. Hirsch to Mr. Jaeger inviting Mr. Jaeger to inspect the original documents in Mr. Hirsch's files and to reconcile receipts for any work that Mr. Jaeger believed had been duplicated;

g.      By failing to implement reasonable standards for the prompt investigation of claims and instead waiting until the claim had already been paid to assert that it was beginning an "investigation" into the claim;

h.      By seeking to void coverage of the Hirschs' claim when a reasonable investigation reveals that the Hirschs' claim is valid;

i.      By failing to reserve any rights or to deny coverage of the Hirschs' claims within a reasonable time after having completed its investigation and instead waiting until almost a year after issuing its last check, essentially paying the claim in full, before attempting to deny coverage under the Hirschs' policy;

j.      By failing to attempt in good faith to effectuate prompt, fair, and equitable settlement of the Hirschs' claim, for which Great Northern's liability had become abundantly clear;

k.      By attempting to void all payments on the Hirschs' claim when a reasonable person would believe the Hirschs were entitled to payment by reference to written or printed advertising material accompanying or made part of the Hirschs' application or policy; and

l.      By attempting to void the Hirschs' policy when a reasonable person would believe the Hirschs were entitled to payment because almost all of the claim submitted had been paid.

61.     As part of an insurance company's fiduciary duty, District of Columbia law further prohibits an insurer from making statements that misrepresent the benefits, advantages, conditions, or terms of an insurance policy or from making public statements with respect to the business of insurance or with respect to an insurer in the conduct of its insurance business that are untrue, deceptive, or misleading.

62.     By providing the Hirschs with advertising materials regarding its "no quibble" and "hassle free" claims handling process, and then quibbling with and hassling the Hirschs over items that are not material to the Hirschs' claim, Great Northern breached its fiduciary duty to the Hirschs.

63.     As a direct and proximate result of Great Northern's breach of fiduciary duty, Joel and Carol Hirsch have suffered damage and are entitled to recover from Great Northern actual damages in an amount to be determined at trial.

64.     In its conduct, Great Northern has been and is guilty of oppression and malice and has otherwise acted in conscious disregard of the Hirschs' rights, and as a direct and proximate cause thereof, the Hirschs are entitled to recover, in addition to actual damages, punitive or exemplary damages in an amount to be determined at trial.

### Count II – Breach of Duty of Good Faith and Fair Dealing

65.     Joel and Carol Hirsch repeat and reallege each and every allegation contained in Paragraphs 1 through 64 as if fully set forth herein.

66.     Masterpiece Deluxe Insurance Policy 11822276-02 is a contract between the Hirschs and Great Northern.

67.     Under Masterpiece Deluxe Insurance Policy 11822276-02, Great Northern owes Joel and Carol Hirsch a duty of good faith and fair dealing.

68.      District of Columbia law sets forth standards for an insurance company's duties of good faith and fair dealing.  Under District of Columbia law, an insurer may not:  unreasonably delay the investigation or payment of claims by requiring both a formal proof of loss form and subsequent verification that would result in duplication of information already in the possession of the insurer; refuse to pay a claim for a reason that is arbitrary or capricious based on all available information; fail to acknowledge and act reasonably promptly upon communication with respect to claims arising under insurance policies; fail to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; refuse to pay claims without conducting a reasonable investigation; fail to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to the claims; fail to attempt in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear; or attempt to settle a claim for less than the amount to which a reasonable person would believe the insured or beneficiary was entitled by reference to written or printed advertising material accompanying or made part of an application or policy.

69.      Great Northern breached its duty of good faith and fair dealing to the Hirschs in the following manner:

a.      By engaging in duplicative claim investigation and/or unreasonably delaying the alleged "investigation" forming the basis for Great Northern's complaint until after the Hirschs' submitted claim had already been paid and the moneys spent by the Hirschs to repair their home and repair or replace its contents;

b.      By unreasonably delaying its denial of coverage to the Hirschs until after the claim had already been paid and the moneys spent by the Hirschs to repair their home and repair or replace its contents:

c.      By requiring the Hirschs to submit both a formal proof of loss form and subsequent verification after Great Northern had already paid their claim and that would simply duplicate information Great Northern already had;

d.      By seeking to void the Hirsch's insurance policy for reasons that are arbitrary and capricious;

e.      By failing to acknowledge and act reasonably promptly upon communications from Mr. Hirsch to Mr. Babinski with respect to the claim for coverage;

f.      By failing to acknowledge and act reasonably promptly upon communications from Mr. Hirsch to Mr. Jaeger inviting Mr. Jaeger to inspect the original documents in Mr. Hirsch's files and to reconcile receipts for any work that Mr. Jaeger believed had been duplicated;

g.      By failing to implement reasonable standards for the prompt investigation of claims and instead waiting until the claim had already been paid to assert that it was beginning an "investigation" into the claim;

h.      By seeking to void coverage of the Hirschs' claim when a reasonable investigation reveals that the Hirschs' claim is valid;

i.      By failing to reserve any rights or to deny coverage of the Hirschs' claims within a reasonable time after having completed its investigation and instead waiting until almost a year after issuing its last check, essentially paying the claim in full, before attempting to deny coverage under the Hirschs' policy;

j.      By failing to attempt in good faith to effectuate prompt, fair, and equitable settlement of the Hirschs' claim, for which Great Northern's liability had become abundantly clear;

k.    By attempting to void all payments on the Hirschs' claim when a reasonable person would believe the Hirschs were entitled to payment by reference to written or printed advertising material accompanying or made part of the Hirschs' application or policy; and

l.    By attempting to void the Hirschs' policy when a reasonable person would believe the Hirschs were entitled to payment because almost all of the claim submitted had been paid.

70.    As part of the duty of good faith and fair dealing, District of Columbia law also prohibits an insurer from making statements that misrepresent the benefits, advantages, conditions, or terms of an insurance policy or from making public statements with respect to the business of insurance or with respect to an insurer in the conduct of its insurance business that are untrue, deceptive, or misleading.

71.    By providing Joel Hirsch with advertising materials regarding its "no quibble" and "hassle free" claims-handling process, and then quibbling with and hassling the Hirschs over items that are not material to the Hirschs' claim, Great Northern breached its duties of good faith and fair dealing to the Hirschs.

72.    Great Northern does not have a reasonable basis for belatedly denying coverage under the Hirschs' insurance policy and Great Northern knew or recklessly disregarded its lack of a reasonable basis when it denied coverage.

73.    As a direct and proximate result of Great Northern's breach of the duty of good faith and fair dealing, Joel and Carol Hirsch have suffered damage and are entitled to recover from Great Northern actual damages in an amount to be determined at trial.

74.     In its conduct, Great Northern has been and is guilty of oppression and malice and has otherwise acted in conscious disregard of the Hirschs' rights, and as a direct and proximate cause thereof, the Hirschs are entitled to recover, in addition to actual damages, punitive or exemplary damages in an amount to be determined at trial.

### Count III – Intentional Infliction of Emotional Distress

75.     Joel and Carol Hirsch repeat and reallege each and every allegation contained in Paragraphs 1 through 74 as if fully set forth herein.

76.     Great Northern's conduct in failing to respond promptly to the Hirschs during the investigation of their claim, sending an investigator to the Hirschs' home who humiliated and disparaged Mr. Hirsch, sending the Hirschs threatening letters, repeatedly inquiring about items that are not material to the Hirschs' claim, seeking to void the Hirschs' insurance policy after paying almost the entirety of their claim (and without refunding premiums paid (with interest)), and seeking recovery of moneys it knows have been spent to repair or replace the Hirschs' home and its contents after damage to the home that it acknowledged was "severe" is egregious, extreme, and outrageous.

77.     Great Northern undertook this course of conduct intending to cause the Hirschs severe emotional distress and/or recklessly disregarding that its conduct would in fact cause the Hirschs severe emotional distress.

78.     As a result, the Hirschs have suffered severe emotional distress and are entitled to recover from Great Northern damages in an amount to be determined at trial.  The Hirschs have not been able to sleep, have suffered loss of appetite, have been unable to enjoy the company of family at their home, have been unable to enjoy the full use of their home, and have endured

severe stress.  Mrs. Hirsch has had a series of medical issues of unknown etiology related to or aggravated by stress.

79.    In its conduct, Great Northern has been and is guilty of oppression and malice and has otherwise acted in conscious disregard of the Hirschs' rights, and as a direct and proximate cause thereof, the Hirschs are entitled to recover, in addition to actual damages, punitive or exemplary damages in an amount to be determined at trial.

### Count IV – Breach of Contract

80.    Joel and Carol Hirsch repeat and reallege each and every allegation contained in Paragraphs 1 through 79 as if fully set forth herein.

81.    Masterpiece Deluxe Insurance Policy 11822276-02 is a duly formed and valid contract between the Hirschs and Great Northern.

82.    Great Northern breached this contract by seeking to void the Hirschs' Masterpiece Deluxe Insurance Policy 11822276-02 for reasons that are not set forth under the terms of the contract and by its other conduct alleged herein.

83.    As a direct and proximate result of Great Northern's breach of contract, the Hirschs have suffered damages and are entitled to recover from Great Northern, reimbursement of all premiums paid on Masterpiece Deluxe Insurance Policy 11822276-02, plus interest, attorneys' fees, and costs of suit.

### Count V – Unfair Trade Practices

84.    Joel and Carol Hirsch repeat and reallege each and every allegation contained in Paragraphs 1 through 83 as if fully set forth herein.

85.    Under the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq*., an insurer may not represent that its services have characteristics that they do

not have; represent that services are of particular standard, quality, grade, style, or model, if in fact they are of another; misrepresent as to a material fact which has a tendency to mislead; fail to state a material fact if such failure tends to mislead; or misrepresent the authority of a representative or agent to negotiate the final terms of a transaction.

86.    Great Northern violated the District of Columbia Consumer Protection Procedures Act in the following manner:

a.    by representing that its claims-handling service had characteristics that it does not have, such as "promptness, fairness, and integrity in settling claims," that its claims services would be "no quibble" and "hassle-free," and that it possessed a "claim service that is world class," when the Hirschs relied on these representations to their detriment;

b.    by representing that its claims-handling service was of a particular standard (*i.e.* "world class," "no quibble," and "hassle-free") when in fact it is not and the Hirschs relied on these representations to their detriment;

c.    by failing to state and inform the Hirschs of the material fact that its payments of $280,065.39 were not in settlement of the Hirschs' claim, thereby misleading the Hirschs and causing them to rely to their detriment on Great Northern in believing that they could use the payments immediately to repair their home and repair or replace its contents;

d.    by failing to state and inform the Hirschs of the material fact that it was reserving its rights and/or planning to deny coverage and seek to recover its payments of $280,065.39 to the Hirschs, thereby misleading the Hirschs and causing them to rely to their detriment on Great Northern in believing that they could use the payments immediately to repair their home and repair or replace its contents;

   e.  by failing to state and inform the Hirschs of the material fact that it reserved the right to deny coverage for reasons other than those set forth in the Hirschs' policy, thereby misleading the Hirschs and causing them to rely to their detriment on Great Northern in believing that the terms of their policy set forth the only circumstances under which coverage could be voided or denied;

   f.  by failing to state the material fact that it reserved the right to deny coverage to the Hirschs almost one year after making payments to the Hirschs in settlement of their claim, thereby misleading the Hirschs and causing them to rely to their detriment on Great Northern in believing that the payments they received from Great Northern were in settlement of their claim and could be used immediately to repair their home and repair or replace its contents;

   g.  by misrepresenting the authority of Mr. Babinski as its representative with authority to settle the Hirschs' claims when in fact Great Northern now seeks to deny coverage almost a year after Mr. Babinski had settled the Hirschs' claim.

  87.  As a direct and proximate result of Great Northern's violation of the District of Columbia Consumer Protection Procedures Act, Joel and Carol Hirsch have suffered damage and are entitled to recover from Great Northern actual damages in an amount to be determined at trial.

  88.  As a direct and proximate result of Great Northern's violation of the District of Columbia Consumer Protection Procedures Act, Joel and Carol Hirsch have suffered damage and are statutorily entitled to recover from Great Northern treble damages.

  89.  In its conduct, Great Northern has been and is guilty of oppression and malice and has otherwise acted in conscious disregard of the Hirschs' rights, and as a direct and proximate

cause thereof, the Hirschs are statutorily entitled to recover, in addition to treble damages, punitive or exemplary damages in an amount to be determined at trial.

## RELIEF REQUESTED

WHEREFORE, Defendants-Counterclaim-Plaintiffs Joel and Carol Hirsch demand judgment against Plaintiff-Counterclaim-Defendant Great Northern, with respect to their first through fifth Counterclaims, for the following relief, jointly, severally, and in the alternative, as follows:

1.      Declaring the Hirschs' Masterpiece Deluxe Insurance Policy issued by Great Northern for the 2006-2007 policy period is valid;

2.      Declaring that the Hirschs need not repay to Great Northern the $280,065.39 paid by Great Northern to the Hirschs in connection with the Hirschs' 2006 claim under their Masterpiece Deluxe Insurance Policy; or

3.      Declaring that the Hirschs need not submit a sworn proof of loss, submit to examinations under oath, or provide any additional documentation to Great Northern in connection with their 2006 claim under their Masterpiece Deluxe Insurance Policy;

4.      Declaring that Great Northern is in breach of its contract with the Hirschs;

5.      Awarding compensatory damages in an amount to be proven at trial, plus interest, attorneys' fees, and costs of suit;

6.      Awarding treble damages under the District of Columbia Consumer Protection Procedures Act, plus interest, attorneys' fees, and costs of suit;

7.      Awarding punitive damages in an amount to be proven at trial, plus interest, attorneys' fees, and costs of suit; and

8.      Awarding such other relief as the Court deems just and equitable.

## JURY DEMAND

Joel and Carol Hirsch hereby demand a trial by jury as to all issues in the instant matter.


Dated: November 28, 2007                                   Respectfully submitted,

                                                                     /s/ Lorelie S. Masters
                                                          Lorelie S. Masters
                                                          D.C. Bar No. 358686
                                                          Jessica Ring Amunson
                                                          D.C. Bar No. 497223
                                                          JENNER & BLOCK, LLP
                                                          601 13th Street, NW, Suite 1200
                                                          Washington, DC  20005
                                                          Telephone:  (202) 639-6000
                                                          Facsimile:  (202) 661-4993
                                                          E-mail:  lmasters@jenner.com
                                                                        jamunson@jenner.com

                                                          *Attorneys for Joel and Carol Hirsch*

## CERTIFICATE OF SERVICE

I hereby certify that, on this the 28th day of November, 2007, I caused the foregoing to be filed using the Court's Electronic Case Filing (ECF) system, which will automatically send notice of such filing to counsel of record in this case.  I further certify that I caused a copy of the foregoing to be served via first class-mail, postage prepaid, upon the following attorneys who would not otherwise receive ECF notification:

William B. Pollard, III
KORNSTEIN VEISZ WEXLER & POLLARD, LLP
757 Third Avenue
New York, NY 10017

Karen Ventrell
ROSS, DIXON & BELL, LLP
2001 K Street, NW
Washington, DC  20006

　　　　　　　　　　　　　　　　　　　　___/s/ Jessica Ring Amunson_____
　　　　　　　　　　　　　　　　　　　　Jessica Ring Amunson
　　　　　　　　　　　　　　　　　　　　D.C. Bar No. 497223
　　　　　　　　　　　　　　　　　　　　JENNER & BLOCK, LLP
　　　　　　　　　　　　　　　　　　　　601 13th Street, NW, Suite 1200 South
　　　　　　　　　　　　　　　　　　　　Washington, DC  20005
　　　　　　　　　　　　　　　　　　　　Telephone:  (202) 639-6000
　　　　　　　　　　　　　　　　　　　　Facsimile:  (202) 661-4993
　　　　　　　　　　　　　　　　　　　　E-mail:  jamunson@jenner.com

　　　　　　　　　　　　　　　　　　　　*Attorney for Joel and Carol Hirsch*