## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
GREAT NORTHERN INSURANCE CO.,             )
    Plaintiff-Counterclaim Defendant,      )
                                          )
                v.                  )    Case No. 1:07-cv-01804-EGS
                                          )
JOEL HIRSCH and CAROL HIRSCH,             )
    Defendants-Counterclaim Plaintiffs.    )
                                          )
_____ )

## JOEL AND CAROL HIRSCH'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO GREAT NORTHERN'S MOTION TO DISMISS COUNTERCLAIMS

### INTRODUCTION

This case arises out of a dispute over whether Great Northern Insurance Company ("Great Northern") is entitled to void the homeowners' insurance policy of, and demand the repayment of more than $280,000 from its policyholders, Joel and Carol Hirsch ("the Hirsches"), almost one year after it issued its last check to the Hirsches in settlement of their claim for severe damage sustained by their home following a "hundred years" storm in June 2006. Great Northern argues that it is entitled to void the policy and recoup all of the $280,000 the Hirsches spent repairing their home after Great Northern specifically approved and reimbursed these repairs, based on its suspicions about two purportedly false documents Joel Hirsch allegedly provided to Great Northern during the course of the claim's submission. However, Great Northern never issued any reimbursement to the Hirsches in connection with these two purportedly false documents, the Hirsches withdrew any claim for reimbursement in connection with these items, and Great Northern ignored the Hirsches' repeated invitations to inspect the documents surrounding these items and resolve any issues related to them or any other matter.

Great Northern's Motion to Dismiss goes on at great length alleged "deception" and "wrongful conduct" by the Hirsches.   Great Northern Motion to Dismiss at 1 (hereinafter "Mot.").  Yet the Motion is most remarkable not for what is says, but for what it fails to say:

- Nowhere does Great Northern acknowledge that the Hirsches suffered damages to their home that Great Northern's own inspectors acknowledged "were quite severe." Counterclaim ¶ 21.

- Nowhere does Great Northern claim that the Hirsches in any way caused the damage to their own home.

- Nowhere does Great Northern admit that it paid the Hirsches $280,065.39 to repair the damage to their home and replace its contents without ever reserving its rights to rescind these payments. *Id*. ¶¶ 25, 30, 32, 36, 39, 40.

- Nowhere does Great Northern disclose that it approved all of the claims for reimbursement submitted by the Hirsches and never asked them for further documentation.  *See id.*

- Nowhere does Great Northern concede that the Hirsches relied on its representations that this $280,065.39 was paid to repair the damage to their home and replace its contents and that the Hirsches therefore used all of the payments from Great Northern for these purposes.  *See id.*

- Nowhere does Great Northern disclose that all of its indignation over allegedly false documents is simply much ado about nothing since it never paid the Hirsches a cent in connection with these documents.  *Id*. ¶¶ 37, 38.

- And nowhere does Great Northern acknowledge that it never followed up with the Hirsches on their offer to inspect their documents and reconcile any purportedly duplicate invoices, or any other matter.  *Id*. ¶¶ 48-49.

Great Northern's Motion to Dismiss is thus a selective presentation of isolated parts of a story that is far more detailed than the "simple" picture Great Northern attempts to paint of a supposedly diligent insurer investigating a possibly fraudulent claim. Mot. at 1.  When the facts in the Counterclaim are construed in the Hirsches' favor, as is required, it is abundantly clear that it is the Hirsches who can and should recover for the "deception" and "wrongful conduct" of Great Northern.

Great Northern's legal arguments fare no better than its factual presentation. At the outset, Great Northern appears to misunderstand the applicable legal standards on a motion to dismiss and essentially asks the Court to construe the facts in its favor. Great Northern also repeatedly and mistakenly accuses the Hirsches of failing to allege elements of their claims that are clearly spelled out in the Hirsches' Counterclaim. Finally, Great Northern distorts or ignores applicable legal precedents that contravene its claims. For all of these reasons, the Motion to Dismiss should be denied.

## <u>BACKGROUND</u>

Joel Hirsch has purchased insurance through the Chubb Group of Insurance Companies, of which Great Northern is a subsidiary, for more than 20 years, and has paid Chubb more than $200,000 in premiums for homeowners and auto coverage. Counterclaim ¶ 9. Mr. Hirsch has held the policy at issue here – the "Masterpiece Deluxe" Insurance Policy, Number 11822276-02 – since June 2000, and has paid a total of $71,573 to Great Northern for coverage under it. *Id*. ¶ 10. Despite the fact that Great Northern is now attempting to void the Hirsches' coverage under this policy, it has not refunded any premiums to the Hirsches. *Id*.

The "Masterpiece Deluxe" policy is represented by Great Northern to be a high-end insurance policy designed for those who have valuable goods to insure. It includes "Deluxe House Coverage," which covers "all risk of physical loss" to the home, and "Deluxe Contents Coverage," which covers "all risk of physical loss" to the contents of the home. *Id.* ¶ 11. This policy provides that it may be voided in one and only one circumstance – if a covered person "intentionally concealed or misrepresented any material fact relating to this policy before or after a loss." *Id*. ¶ 12. The policy nowhere states that the insurer has the right to void it if the policyholder does not submit to an examination under oath, provide authorizations for Great

Northern to obtain documents from third parties, or provide a sworn proof or loss.  *Id.* ¶ 13.[1]
And it certainly does not provide that an insurer may demand all of these things *after* it has
already paid the policyholder's claim.

The Hirsches purchased Great Northern's Masterpiece Deluxe Insurance Policy in part
based on representations regarding Chubb's claims-handling service, such as the representation
that:  "The ultimate test of any insurance company is how it handles claims.  Since 1882, Chubb
[the parent company of Great Northern] has been known for promptness, fairness, and integrity
in settling claims. . . .  We make every effort to contact you within 24 hours of receiving your
claim and strive to issue payment within 48 hours of a settlement."  *Id.* ¶ 15; *see also id.* ¶¶ 14,
16.  The Hirsches received promotional materials from Chubb regarding its claims-handling
service and relied upon them, believing that if their home was damaged, Great Northern would
perform as promised.  *Id.* ¶¶ 14-16.

On June 25, 2006, record-breaking rainfall in Washington, DC, caused severe damage to
the Hirsches' home and its contents.  *Id.* ¶ 18.  Joel Hirsch immediately reported this damage to
Great Northern and made a claim under his Masterpiece Deluxe Insurance Policy for coverage.
*Id.* ¶ 18.  Great Northern then sent a claims adjuster, Larry Babinski, to the Hirsches' home to
assess the damage.  *Id.* ¶ 20.  Following this visit, the adjuster advised his supervisor that "the
damages [to the home and its contents] were quite severe.  [The] loss involves damage on
multiple floors and specialty items such as plaster moldings in the living room."  *Id.* ¶ 21.  Great
Northern also sent a consultant, Chris Minkoff, to inspect the damages, who concurred in this
assessment.  *Id.*  Throughout the months of July, August, September, and October 2006, the

---

[1] The Hirsches make no concessions on these points and, in fact, submit that the evidence will
show that Great Northern was satisfied with their submissions on the claim – at least until a
change in personnel belatedly signaled a change in Great Northern's position toward the claim.

Hirsches were in frequent contact with Great Northern regarding repairs to their home and replacement of its contents. *See id*. ¶¶ 22-42. However, Mr. Hirsch repeatedly was forced to seek the intervention of his insurance broker when Great Northern ignored his calls or delayed processing of the claim. *Id*. ¶¶ 22, 33-34. Over these months, the Hirsches submitted multiple estimates and invoices to Great Northern for the work occurring on their home. *See id.* at ¶¶ 22-42. During these months, Great Northern never questioned these estimates or invoices, never requested that the Hirsches submit a sworn proof of loss, never demanded that the Hirsches sit for examinations under oath, and never indicated that anything was amiss in the processing of the Hirsches' claim. *See id*.

Between July and October 2006, Great Northern issued the Hirsches a series of seven checks, totaling $280,065.39. *Id*. ¶ 40. Along with these checks, Great Northern sent the Hirsches itemized spreadsheets showing what it was paying toward the Hirsches' home and its contents. These spreadsheets reflected the estimates and invoices submitted by the Hirsches and specifically approved by Great Northern. The last of Great Northern's seven checks was issued on October 23, 2006. *Id.* ¶ 39. When issuing these checks, Great Northern never stated that it was reserving its rights to demand further documentation from the Hirsches as proof of their loss. *See id*. ¶¶ 25, 30, 32, 36, 39, 40, 41. Indeed, Great Northern never at any time during the claims adjustment period reserved any rights as to any further demands it might make of the Hirsches. *See id.* Great Northern paid this $280,065.39 based on its investigation of the claim by its adjuster and consultant and, as of the time of its last payment, had never asked the Hirsches to submit a sworn proof of loss or to submit to an examination under oath. *Id.* ¶ 41. Consequently, the Hirsches used all of the monies paid by Great Northern to repair their home and replace its contents, which Great Northern knew. *See id*. ¶¶ 25, 30, 32, 36, 39, 40, 41. Great Northern's

employees up the chain of command specifically approved the payments to the Hirsches and understood that the Hirsches would use, and did use, the moneys to repair the extensive damage to their home. *See id.*

In December 2006, just as the Hirsches finally were able to begin enjoying the use of their home and its contents again, an investigator from Great Northern named Dan Jaeger came to the Hirsches' home and demanded to see and photograph certain items. The investigator, who was new to the claim and refused to state the nature of the agenda for his visit in advance, also requested that Mr. Hirsch submit to a recorded interview. *Id.* ¶ 45. In the interview, the investigator repeatedly asked Mr. Hirsch about two documents he had submitted to the claims adjuster, Mr. Babinski, but which he subsequently told the adjuster to disregard. *Id.* ¶¶ 37, 38, 43, 46. The investigator disparaged and humiliated Mr. Hirsch, using a condescending and accusatory tone and implying that Mr. Hirsch was attempting to defraud Great Northern based on these two documents. *Id.* ¶ 47.

Immediately following this visit from the investigator, Mr. Hirsch contacted Great Northern and offered to make available the documents that the investigator had inquired about during the interview. *Id.* ¶ 48. Mr. Hirsch noted that there may have been some misunderstanding with respect to certain of the documentation, but that he was sure this was "not a problem which cannot be sorted out." *Id.* Mr. Hirsch invited the investigator to examine the documentation in his files in order to resolve any issues. *Id.*

Great Northern never responded to Mr. Hirsch's invitation. Instead, in late December 2006, Mr. Hirsch was advised that no further payments would be made until Great Northern completed an investigation, and he subsequently began receiving threatening letters from attorneys retained by Great Northern. *Id.* ¶¶ 49-53. These letters demanded that the Hirsches be

deposed under oath and that they submit voluminous documentation to Great Northern, including, for example, all "original purchase receipts . . . reflecting the purchase and/or current value of all property which is the subject of this claim" and all "credit card records for any and all credit cards maintained by Joel and/or Carol Hirsch . . . that reflect all purchases made from January 1, 2006 through the present." *Id.* ¶ 50. These demands were made more than six months after the damage to the Hirsches' home occurred and more than two months after Great Northern had issued its last payment in settlement of the Hirsches' claim. *Id.* The Hirsches were surprised by these new demands and responded by stating that they had already provided Great Northern with all of the documentation it had requested, that Great Northern had already paid their claim, and that they had already spent the money to repair their home and replace its contents. *Id.* ¶¶ 49-53. The Hirsches considered their claim essentially resolved.

However, on October 9, 2007, counsel for Great Northern served Mr. Hirsch with the Complaint in this matter, asserting that the Hirsches' Masterpiece Deluxe Insurance Policy was void and that the Hirsches must repay the $280,065.39 that Great Northern issued to them in settlement of their claim. *Id.* ¶ 54. Great Northern thus waited until *almost a year* after issuing its last check to the Hirsches, knowing that the Hirsches had used all of the payments from Great Northern to repair their home replace its contents, before asserting that it was denying coverage. It waited almost a year despite the fact that the basis upon which it claimed the right to void the Hirsches' policy had been known to them the entire twelve months. *Id.* ¶¶ 45-48. And it claimed the right to void coverage without ever having reserved any rights in connection with the payments made to the Hirsches. *Id.* ¶ 55.

As a direct and proximate result of Great Northern's extreme and outrageous conduct in handling their claim so poorly, harassing and haranguing them for additional documentation,

refusing their invitation to inspect documents and resolve any discrepancies, and then serving them with a lawsuit to recover monies Great Northern knew had already been spent to repair severe water damages to their home, Mr. and Mrs. Hirsch have suffered severe emotional distress. They have not been able to sleep, have suffered loss of appetite, have been unable to enjoy the company of family at their home, have been, and continue to be, unable to enjoy the full use of their home, and have endured severe stress. Mrs. Hirsch also has had a series of medical issues related to or aggravated by stress. *Id.* ¶ 56.

Although they did everything in their power to resolve these matters amicably so that resort to litigation would not be necessary, the Hirsches nonetheless find themselves defendants in Great Northern's lawsuit for breach of contract and unjust enrichment.[2] The Hirsches have therefore counterclaimed against Great Northern for breach of fiduciary duty, breach of the duty of good faith and fair dealing, breach of contract, intentional infliction of emotional distress, and violations of the Consumer Protection Procedures Act. Due to the intentional malice exhibited by Great Northern toward the Hirsches while they were in a vulnerable state, the Hirsches are also claiming punitive damages.

## **ARGUMENT**

"In appraising the sufficiency of a complaint [or counterclaim], a court must follow 'the accepted rule that a complaint [or counterclaim] should not be dismissed unless it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief." *Barham v. Ramsey*, 338 F. Supp. 2d 48, 54 (D.D.C. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (stating that a court may grant a motion to dismiss "only if it is clear that no relief could be

---

[2] Curiously, although Great Northern claims it is entitled to void that Hirsches' insurance policy based on their supposed fraud, they have not alleged a claim of fraud against the Hirsches.

granted under any set of facts that could be proved consistent with the allegations"). For a complaint to survive a motion to dismiss, it need only provide a short and plain statement of the claim and the grounds on which it rests, because a motion to dismiss tests not whether the pleader will prevail on the merits of his claims, but whether the pleader has stated a claim. *See* Fed. R. Civ. P. 8(a)(2), 12(b)(6); *see also Conley*, 355 U.S. at 47. "For purposes of a motion to dismiss, a court must treat the [pleader's] factual allegations as true, and must liberally construe the complaint in favor of the [pleader]." *Barham*, 338 F. Supp. 2d at 54 (citing *Warth v. Seldin*, 422 U.S. 490, 501, (1975); *Jenkins v. McKeithen*, 395 U.S. 411, 421-422 (1969)). Thus, all facts must be construed in favor of the Hirsches.

Moreover, in deciding a 12(b)(6) motion, the Court may consider only the facts alleged in the pleadings, the documents attached as exhibits to the pleading, and those documents specifically incorporated by reference into the pleadings. *See, e.g., Adams v. Pension Ben. Guar. Corp.*, 332 F. Supp. 2d 231, 235 (D.D.C. 2004). Although Great Northern alleges that its Motion to Dismiss relies only on documents "incorporated into the pleadings by reference," the Hirsches did *not* incorporate by reference the recorded, unsworn interview transcript submitted by Great Northern as Exhibit B to its Motion to Dismiss. *See* Mot. at 6 & n*. The Hirsches' mere reference to a "recorded interview" in Paragraph 45 of their Counterclaim cannot possibly be construed as an incorporation of the alleged transcript of the interview. *See, e.g., Johnson v. Long Beach Mortg. Loan Trust 2001-4*, 451 F. Supp. 2d 16, 46-47 (D.D.C. 2006). Great Northern never gave the Hirsches the opportunity to review or correct this alleged transcript and, in fact, only provided it to the Hirsches after their repeated requests. Thus, the Court may not rely on the alleged interview transcript submitted as Exhibit B to Great Northern's Motion to Dismiss until the Hirsches have been given the opportunity to present material pertinent to the

alleged transcript.  *See Johnson*, 451 F. Supp. 2d at 46-47 (defendant attached document to its motion to dismiss that it alleged was central to plaintiff's claims, but Court found that it was not attached to or incorporated in plaintiff's complaint and therefore "cannot be considered until both parties have been given reasonable opportunity to present material pertinent to it").[3]

Under these standards, as is more fully set forth below, it is clear that none of the Hirsches' counterclaims should be dismissed.

## I.    The Hirsches Have Stated A Claim for Breach of Fiduciary Duty.

Great Northern's assertion that "District of Columbia law does not recognize a fiduciary relationship between an insurer and its policyholder" is simply wrong.  Mot. at 13.  In *Central Armature Works, Inc. v. American Motorists Ins. Co.*, 520 F. Supp. 283 (D.D.C. 1981), this Court held that, "under the law of the District of Columbia, an insurer has additional obligations to its insured which subject it to more stringent standards of conduct than those normally imposed on parties to a contract." *Id.* at 292; *see also Washington v. Group Hospitalization, Inc.*, 585 F. Supp. 517, 521 (D.D.C. 1984) (same); *Messina v. Nationwide Mut. Ins. Co.*, 998 F.2d 2, 5 (D.C. Cir. 1993) (citing "the fiduciary relationship between the insurer and the insured" that arises because "insurance contracts have special characteristics that warrant heightened liability for breach of that covenant").   These additional obligations include the "duty to process and pay claims expeditiously and in good faith," *Continental Ins. Co. v. Lynham*, 293 A.2d 481, 483 (D.C. App. 1972), as well as the "duty to disclose material information," and to advise its policyholders of "circumstances that threaten interests relevant to the relationship," *Eddy v.*

---

[3] Nor may Great Northern allege that this Court should look to matters beyond the pleadings and thereby convert its motion to dismiss into a motion for summary judgment.   Great Northern has not "specifically moved for summary judgment with respect to plaintiff's claims" and the Hirsches are responding herein only to the motion to dismiss.  *Tripp v. Department of Defense*, 219 F. Supp. 2d 85, 93 (D.D.C. 2002) ("Defendant's arguments in its Memorandum in support of the motion all go to dismissal" pursuant to Rule 12(b)(6)).

*Colonial Life Ins. Co.*, 919 F.2d 747, 750 (D.C. Cir. 1990); *see also Wagman v. Lee*, 457 A.2d 401, 404 (D.C. 1983) (noting that an "insurer's wrongful failure to settle breaches both contractual and fiduciary obligations" (citing *Rova Farms Resort, Inc. v. Investors Ins. Co. of America*, 323 A.2d 495, 511 (N.J. 1974))).

In its motion to dismiss, Great Northern simply ignores these precedents and then distorts those upon which it does rely. *Fireman's Fund Insurance Co. v. CTIA*, 480 F. Supp. 2d 7, 15 (D.D.C. 2007) – the case primarily relied upon by Great Northern – does not hold that a fiduciary relationship can never arise between an insurer and its policyholder. Indeed, the *Fireman's* court specifically acknowledged that such a relationship can and does arise in situations in which there is a potential for a "heightened conflict of interest between insurer and insured." *Id.* Contrary to Great Northern's sweeping interpretation of *Fireman's* import as barring any claim for breach of fiduciary duty by a policyholder against an insurer, the court merely held that, in that specific case, it was not convinced that the "duty to defend gives rise to a fiduciary duty between an insurer and insured such that punitive damages may be awarded for its breach" because it was clear that the *only* basis for the duty to defend was the contract between the parties. *Id.*[4]

Here, the fiduciary relationship between Great Northern and the Hirsches arose not merely from the insurance contract, but from the entire course of dealing between the parties, as detailed in the Hirsches' Counterclaim. It is well established that "[a] fiduciary relationship exists when one party 'is under a duty to act for or give advice for the benefit of another upon

---

[4] Great Northern also relies upon a treatise for its contention that "a fiduciary relationship is not established by the mere fact of an insurance relationship between the parties." Mot. at 14. However, it neglects to quote the directly antecedent passages of the treatise, which state that the "relationship between the parties determines the extent of the duties owed to the insured" and that the courts must look to factors such as "the insurer's reservation of certain contractual rights, the limiting effects of local statutes, actual representations the insurer has made to the insured, and any actions the insurer has undertaken that may adversely affect the insured's interests." *Couch* § 198:7.

matters within the scope of the relation.'"  *Government of Rwanda v. Rwanda Working Group*, 227 F. Supp. 2d 45, 64 (D.D.C. 2002) (quoting *Restatement (Second) Torts* § 874 cmt. a (1977)). Here, Great Northern was under a duty to act for the benefit of the Hirsches in settling their claim.  Moreover, a fiduciary relationship is "founded upon trust or confidence reposed by one person in the integrity and fidelity of another.  It is said that the relationship exists in all cases in which influence has been acquired and betrayed." *Church of Scientology Int'l v. Eli Lilly & Co.*, 848 F. Supp. 1018, 1028 (D.D.C.1994) (internal quotations omitted).  Here, the Hirsches clearly placed their trust and confidence in the integrity and fidelity of Great Northern and its representatives.  Indeed, it was to Great Northern that they turned in their most vulnerable time – their house had been "severely damaged" by a storm and many of their possessions destroyed. The Hirsches relied on Great Northern to process and pay their claims expeditiously and in good faith.  *See  Continental Ins. Co.*, 293 A.2d at 483.  They further relied on Great Northern and its representatives to disclose material information to them.  *See Eddy*, 919 F.2d at 750.  The fact that Great Northern now claims that its payments were not, in fact, in settlement of the Hirsches' claim but were subject to recall by Great Northern is certainly a material fact that Great Northern was obligated to disclose to the Hirsches.  *See id.*  As pled in the Hirsches' Counterclaim, Great Northern acquired and then betrayed the trust and confidence of the Hirsches by approving all of the reimbursement requests submitted by the Hirsches, purporting to settle their claims without making any reservation of rights and then – a year later, after the money had been spent – claiming that the Hirsches must repay them all of the monies they had received in settlement of their claim.  This states a claim for breach of fiduciary duty.

Great Northern next contends that, "[e]ven if the Court were to find a fiduciary relationship existed between Great Northern and Defendants, none of the facts alleged in the first

counterclaim constitute a breach of that duty." Mot. at 14. This is patently untrue. As set forth in greater detail in Count I and throughout the Hirsches' Counterclaim, Great Northern abused the trust and confidence placed in them by the Hirsches in multiple ways. Great Northern's assertion that its actions were all "strictly tied to the application of its rights under the Policy to investigate, adjust, and settle the claim" completely ignores the history of this claim. Mot. at 14. Great Northern unreasonably delayed its alleged "investigation" of the Hirsches' claim until after the claim had already been paid and the money spent by the Hirsches to repair their home and repair or replace its contents. *See* Counterclaim ¶¶ 45-55. Every time Great Northern issued a check to the Hirsches, it did so without reserving any rights. *See id.* ¶¶ 25, 30, 32, 36, 39, 40, 41. It then waited until *almost a year* after issuing its last check, after essentially paying the claim in full, before asserting a right to deny coverage under the Hirsches' policy. *Id.* ¶ 55. These are not the actions of a fiduciary, and the Hirsches have clearly pled a claim for breach of fiduciary duty.

## II.    The Hirsches Have Stated A Claim for Breach of the Duty of Good Faith and Fair Dealing.

It is well established that an "insurer has a duty of good faith and fair dealing toward the insured." *Couch on Insurance* § 40.7 (2007). This duty "arises out of the special relationship that exists between the parties because of their unequal bargaining power and the potential for an insurer to take advantage of an insured's hardships when negotiating to settle or resolve a claim." *Id.* Great Northern concedes, as it must, that the District of Columbia recognizes an independent tort for breach of the duty of good faith and fair dealing. *See* Mot. at 15 (citing *Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006); *see also Cambridge Holdings Group, Inc. v. Federal Ins. Co.*, 357 F. Supp. 2d 89, 95 (D.D.C. 2004) ("Under District of Columbia law, all contracts contain an implied duty of good faith and fair dealing, which means that neither party shall do anything which will have the effect of destroying or injuring the right of the other party

to receive the fruits of the contract." (internal quotation marks omitted)); *Washington*, 585 F.

Supp. at 520.

However, Great Northern argues that the Hirsches have failed to state a claim for breach

of the duty of good faith and fair dealing because the Hirsches supposedly "do not allege that

Great Northern did anything to destroy or injure the Hirsches' right to receive coverage benefits

under the Policy." Mot. at 15. This appears to be a willful misreading of the Hirsches'

Counterclaim. As is specifically stated in Count II of the Hirsches' Counterclaim, the Hirsches'

have alleged that Great Northern has sought to destroy or injury the Hirsches' right to receive the

benefits to which they are entitled under their Masterpiece Deluxe Insurance Policy by, *inter*

*alia*:

- seeking to void the Hirsch's insurance policy for reasons that are arbitrary and capricious;

- seeking to void insurance coverage of the Hirsches' claim when a reasonable investigation reveals that the Hirsches' claim is valid;

- failing to reserve any rights or to deny coverage of the Hirsches' claims within a reasonable time after having completed its investigation and instead waiting until almost a year after issuing its last check, essentially paying the claim in full, before attempting to deny coverage under the Hirsches' policy;

- failing to attempt in good faith to effectuate prompt, fair, and equitable settlement of the Hirsches' claim, for which Great Northern's liability had become abundantly clear;

- attempting to void all payments on the Hirsches' claim when a reasonable person would believe the Hirsches were entitled to payment by reference to written or printed advertising material tendered to the Hirsches and accompanying or made part of their application or policy; and

- attempting to void the Hirsches' policy when a reasonable person would believe the Hirsches were entitled to payment because almost all of the claim submitted had been paid.

*See* Counterclaim ¶ 69. Clearly, all of the above also show that Great Northern is attempting to

"evade the spirit of the contract" and "willfully render imperfect performance" under it. *See*

Mot. at 15 (quoting *Allworth*, 890 A.2d at 201; *see also* D.C. Stat. § 31-2231.17 (detailing unfair insurance claim settlement practices).

Great Northern contends, however, that it was "merely exercising its rights under its contract," and therefore "there can be no breach of the duty of good faith and fair dealing as a matter of law." Mot. at 16. The cases relied upon by Great Northern for this argument simply do not support its position. In *Cambridge Holdings Group, Inc., v. Federal Insurance Co*., 357 F. Supp. 2d 89 (D.D.C. 2004), the Court merely held that Chubb (the parent company of Great Northern) could not be held liable for a breach of duty of good faith and fair dealing by denying benefits to a party who was not an insured under the policy where the "express terms of the policy provide[d] that only the insured [was] entitled to recover for any covered loss." *Id*. at 95. The case is thus entirely inapposite from the Hirsches' case, where they were clearly entitled to recover for the covered loss; Great Northern paid them for the covered loss; and then one year later, Great Northern attempted to void the policy and recover the payments the Hirsches had already spent in repairing the covered loss. *Nationsbank of D.C., N.A. v. Cole*, Civ. A No. 91-708, 1993 WL 464837, at *2 (D.D.C. Nov. 1, 1993), which Great Northern cites for the proposition that there is no breach of the duty of good faith and fair dealing when the defendant "proceeds in a manner both parties agreed to in advance" is also inapposite. Mot. at 16. Obviously the Hirsches did not agree in advance to allow Great Northern to proceed as it did in this case. Similarly unavailing are *Flecha De Lima v. International Medical Group, Inc.*, No. 01CA6866, 2004 WL 2745654, at *6 (D.C. Super. Nov. 29, 2004), and *Obelisk Corp. v. Riggs National Bank*, 668 A.2d 847, 854 n.4 (D.C. 1995). *Flecha* simply held – following extensive discovery – that the plaintiff's claim for breach of the duty of good faith and fair dealing lacked factual support. 2004 WL 2745654, at *6. *Obelisk* held – following a trial – that, even if a duty

of good faith existed between the parties, damages were too speculative to permit recovery. 668 A.2d at 854. None of these cases is remotely on point.

In contrast, in *Martin v. Washington Metropolitan Area Transit Authority*, 273 F. Supp. 2d 114, 117 (D.D.C. 2003), the Court held that the plaintiff's allegations that the defendant had "breached its oral and written assurances" to him and that he "relied on these assurances to his detriment" were sufficient to state a claim for breach of the duty of good faith and fair dealing. As the Court noted, "[c]onsistent with notice pleading standards, at this point in the lawsuit – without the benefit of affidavits – the Court infers that these alleged assurances, once propounded, would form a sufficient basis for a claim. . . ." *Id*. at 117-18; *see also Ames v. HSBC Bank USA, N.A*., No. 06-2039, 2007 WL 1404443, at *3 (D.D.C. May 11, 2007) (holding that where plaintiff had adequately pled claim for breach of contract, she had also adequately pled claim for breach of the duty of good faith and fair dealing inherent in the contract).

At the very least, there is a factual dispute as to whether Great Northern's actions in this matter were pursuant to its contractual rights. The Hirsches clearly do not believe that Great Northern was exercising its rights under the contract by waiting until almost a year after it had made its last payment to the Hirsches in settlement of their claim before seeking to void the Hirsches' policy for reasons that are not set forth in the contract. When the facts are read in the light most favorable to the Hirsches, as they must be, the Hirsches have alleged that Great Northern was not acting pursuant to its contractual rights, but instead was engaged in bad-faith claims handling practices. The Hirsches have adequately pled a claim for breach of the duty of good faith and fair dealing.

### III.    The Hirsches Have Stated A Claim for Intentional Infliction of Emotional Distress.

Great Northern next contends that the Hirsches have not adequately pled a claim for intentional infliction of emotional distress because their allegations supposedly "show nothing more than an ordinary effort by Great Northern to investigate suspected claim fraud."  Mot. at 18.  This is far from an "ordinary effort" to investigate suspected claim fraud.  Most notably, the alleged "investigation" did not even begin until after Great Northern had already paid the Hirsches' claim and the Hirsches had spent the money to repair their home and replace its contents.  As alleged in the Hirsches' Counterclaim, Great Northern has engaged in the following conduct, which is far from "ordinary" and is in fact extreme and outrageous:

- sending an investigator to the Hirsches' home who humiliated and disparaged Mr. Hirsch;

- sending the Hirsches threatening letters, repeatedly inquiring about items that are not material to the Hirsches' claim;

- attempting to void the Hirsches' insurance policy after paying almost the entirety of their claim (and without refunding premiums paid (with interest));

- waiting until *almost a year* after it had made its last payment to the Hirsches in settlement of their claim before claiming the right to void their policy, despite the fact that the grounds upon which it claimed the right to void the policy had been known to it the entire year; and

- seeking recovery of moneys it knows have been spent to repair or replace the Hirsches' home and its contents after damage to the home that it acknowledged was "severe."

*See* Counterclaims ¶¶ 45-56.

It is well-established that the extreme and outrageous nature of conduct underlying an intentional infliction of emotional distress claim "'may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity.'" *Drejza v. Vaccaro*, 650 A.2d 1308, 1313 (D.C. 1994) (quoting *Restatement (Second) of Torts* § 46 (1965)). Conduct "may become heartless, flagrant, and

outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know." *Id.* Here, Great Northern knew that the Hirsches were particularly susceptible to emotional distress because they knew that the Hirsches had suffered severe damage to their home and were living in chaos as their house was in shambles and many of their possessions had been ruined. Moreover, Great Northern undoubtedly realized that its demand that the Hirsches repay more than $280,000 that they had already spent to repair their home and replace its contents would cause the Hirsches emotional distress. This case is therefore similar to *Lattimore v. Northwest Co-op Homes Ass'n*, No. 90-0049, 1992 WL 118383 (D.D.C. May 19, 1992), in which the Court found it was "relevant to whether plaintiff satisfied her burden to allege facts comprising this tort that she was in a fragile state at the time, [and] that defendants knew or should have known that she was at that time 'peculiarly susceptible to emotional distress.'" *Id.* at *4. The *Lattimore* court therefore held that plaintiff had adequately pled a claim for intentional infliction of emotional distress against the defendant despite the defendant's contention that it was merely acting pursuant to its rights under certain regulations to evict the plaintiff. *See id.*

Moreover, the Hirsches have adequately pled that Great Northern's conduct was the proximate cause of the emotional distress they have suffered. The Hirsches have pled that, "[a]s a result" of Great Northern's conduct, they have suffered sleeplessness, loss of appetite, the inability to enjoy the company of family at their home, and severe stress. Counterclaim ¶ 78; *see id.* ¶ 56. In addition, Mrs. Hirsch has had a series of medical issues related to or aggravated by this stress. *See id.* Great Northern nonetheless suggests that these are not "compensable injuries for the tort alleged." Mot. at 19. This is simply wrong. It is well-established that "current D.C. law allows an action for intentional infliction of emotional distress to be made out even in the absence of physical injury or impact." *Ross v. DynCorp*, 362 F. Supp. 2d 344, 360-61 (D.D.C.

2005) (internal quotation marks and alteration omitted); *see also Boyd v. Snow*, 335 F. Supp.2 d 28, 39 (D.D.C. 2004) (denying motion for summary judgment and allowing plaintiff to prove actual damages at trial, where plaintiff alleged "severe emotional and physical harm, stress, sleeplessness and nightmares").   Because the Hirsches have detailed the nature of their severe emotional distress and because they have alleged that Great Northern's extreme and outrageous conduct was the proximate cause of such distress, they have adequately pled a claim for intentional infliction of emotional distress.

**IV.    The Hirsches Have Stated A Claim for Breach of Contract.**

In its Motion to Dismiss, Great Northern seeks to have it both ways.  It urges the Court to dismiss Counts I of the Hirsches' Counterclaim on the ground that the parties' relationship is only contractual in nature and therefore there is no tort.  It then urges the Court to dismiss Count III of the Counterclaim on the ground that no contractual provision was breached.   Great Northern's motion to dismiss the breach of contract Counterclaim is frivolous and should be disregarded.

Great Northern cites no authority at all in support of its various spurious arguments as to why the breach of contract claim should be dismissed, and ignores the allegations in the Hirsches' Counterclaims.  *Compare, e.g.,* Mot. at 20 (alleging breach of contract claim should be dismissed because the counterclaim "does not allege any contractual provision that was breached"); *with Butler v. Fairbanks Capital*, No. Civ. A. 04-0367, 2005 WL 5108537, at *7 (D.D.C. Jan. 2, 2005) (refusing to dismiss plaintiff's breach of contract claim despite defendant's contention that plaintiff did not allege a specific contractual provision that was violated); *compare, e.g.,* Mot. at 20 (alleging breach of contract claim should be dismissed because the Counterclaim "does not allege any damages flowing from supposed breach") *with* Counterclaim

¶ 83 ("As a direct and proximate result of Great Northern's breach of contract, the Hirsches have suffered damages and are entitled to recover from Great Northern, reimbursement of all premiums paid on Masterpiece Deluxe Insurance Policy 11822276-02, plus interest, attorneys' fees, and costs of suit."); *id*. at ¶ 10 ("Joel Hirsch has held the Masterpiece Deluxe Insurance Policy, Number 11822276-02, since June 2000. He has timely paid all premiums due on the policy. Between June 2000 and March 2007, the Hirsches paid a total of $71,573 to Great Northern for coverage under this specific insurance policy. No premiums have been refunded to the Hirsches.").

Great Northern is apparently attempting to obfuscate the fact that the Hirsches have plainly pled a claim for breach of contract under District of Columbia law. "A plaintiff states a claim for breach of contract by alleging the existence of a valid and enforceable contract between the plaintiff and defendant, the obligation of defendant thereunder, a violation by the defendant, and damages resulting to plaintiff from the breach." *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 282 (D.D.C. 2005) (internal quotation marks omitted). These requirements are clearly met.

First, the Hirsches have alleged that a valid and enforceable contract indisputably existed between the parties. Indeed, Great Northern attached that contract as Exhibit A to its Motion to Dismiss.

Second, the Hirsches have alleged that Great Northern had obligations under that contract. As stated in the Hirsches' Counterclaim, their insurance policy provided "Deluxe House Coverage," under which Great Northern was obligated to cover "all risk of physical loss" to the Hirsches' home, and "Deluxe Contents Coverage," under which Great Northern was obligated to cover "all risk of physical loss" to the contents of the Hirsches' home. Counterclaim ¶ 11; *see also* Exhibit A to Great Northern's Motion to Dismiss at B-3 ("In Deluxe House

Coverage, a 'covered loss' includes **all risk** of physical loss to your house or other property covered under this part of your Masterpiece Policy, unless stated otherwise or an exclusion applies.  Exclusions to this coverage are described in **Exclusions**."); *id.* at C-3 ("In Deluxe Contents Coverage, a 'covered loss' includes **all risk** of physical loss to your contents or other property covered under this part of your Masterpiece Policy, unless stated otherwise or an exclusion applies.  Exclusions to this coverage are described in **Exclusions**.").  No "Exclusions" listed in the insurance policy barred the Hirsches' claim for coverage of their loss.

Great Northern was further obligated under District of Columbia law, which governs all contracts for insurance in the District of Columbia, to engage in fair claims-handling practices. *See* D.C. Stat. § 31-2231.17; *see also Couch on Insurance* § 207:1, at 207-9 ("[A]n insured may bring a breach of contract action against an insurer which delays or refuses to pay benefits due under the policy.").  These obligations include the duty not to unreasonably delay the investigation or payment of claims by requiring both a formal proof of loss form and subsequent verification that would result in duplication of information already in the possession of the insurer; refuse to pay a claim for a reason that is arbitrary or capricious based on all available information; fail to acknowledge and act reasonably promptly upon communication with respect to claims arising under insurance policies; fail to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; refuse to pay claims without conducting a reasonable investigation; fail to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to the claims; fail to attempt in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear; or attempt to settle a claim for less than the amount to which a reasonable person would believe the policyholder or beneficiary was entitled by

reference to written or printed advertising material accompanying or made part of an application or policy. *See* D.C. Stat. § 31-2231.17.

Third, the Hirsches have alleged that Great Northern violated its obligations under the contract by seeking to void their insurance policy for reasons that are not set forth under the terms of the contract and by the other conduct alleged in the Hirsches' Counterclaim. As set forth in the Hirsches' Counterclaim, the policy states that it can be voided in only one circumstance: where the policyholder "intentionally concealed or misrepresented any material fact relating to this policy before or after a loss." Counterclaim ¶ 12. The Hirsches have not intentionally concealed or misrepresented any material fact relating to their policy either before or after the loss at issue.[5] Great Northern's attempts to evade its obligation under the contract to pay the Hirsches' claim is therefore a breach of contract. *See, e.g., Pagan v. Murray*, 628 A.2d 110, 112 (D.C. 1993) (holding that defendant who purported to declare a contract void and refused to perform was liable for breach of contract).

Finally, the Hirsches have suffered damages as a result of the breach. In contending that the Hirsches have failed to allege damages, Great Northern has apparently ignored Paragraph 83 of the Hirsches' Counterclaim, which states that, "[a]s a direct and proximate result of Great

---

[5] It is well-established that any ambiguities in language that would exclude insurance coverage are to be construed in favor of the insured. *See, e.g., Nationwide Mut. Ins. Co. v. Richardson*, 270 F.3d 948, 954-55 (D.C. Cir. 2001) ("Under District of Columbia law, an insurance policy is a contract whose construction is based on its language. The burden is on the insurer to spell out in terms understandable to the man in the street any provisions that would exclude coverage. Unless the language of such a provision is unambiguous, doubts are to be resolved in favor of the insured. This is because insurers draft the contracts, with the help of experts and lawyers." (internal quotations marks and citation omitted)). Here, even if Great Northern were correct – which it is not – in claiming that the Hirsches misrepresented a material fact with respect to their *claim*, the Hirsches certainly did not misrepresent any material fact relating to their *policy*, either before or after the loss. At best, the language of this provision is ambiguous with regard to representations made regarding *claims during the claims-handling process* and ambiguous language must be construed in favor of the Hirsches.

Northern's breach of contract, the Hirsches have suffered damages and are entitled to recover from Great Northern, reimbursement of all premiums paid on Masterpiece Deluxe Insurance Policy 11822276-02, plus interest, attorneys' fees, and costs of suit." Counterclaim ¶ 83. The Hirsches have paid Great Northern $71,573 in premiums for Masterpiece Deluxe insurance coverage. *Id*. ¶ 10. Despite the fact that Great Northern is now attempting to void the Hirsches' coverage under this policy, it has not refunded any premiums to the Hirsches. *See id.*

## V.    The Hirsches Have Stated A Claim Under the Consumer Protection Procedures Act.

Great Northern next moves to dismiss the Hirsches' claim under the Consumer Protection Procedures Act ("CPPA"). As District of Columbia courts have noted, the CPPA "was intended to be a far-reaching consumer protection law." *Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 710 (D.C. 1981); *see also District Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 717 (D.C. 2003) ("The District of Columbia Consumer Protection Procedures Act affords a panoply of strong remedies, including treble damages, punitive damages and attorneys' fees, to consumers who are victimized by unlawful trade practices."). Courts have repeatedly cited the liberal construction that must be given its terms in light of its intended remedial purposes. *See, e.g.*, *Cooper v. First Gov't Mortg. & Investors Corp.*, 206 F. Supp. 2d 33, 35 (D.D.C. 2002) (The CPPA "defines its terms comprehensively so that it can provide a remedy for all improper trade practices." (citation omitted)). The Hirsches have clearly pled that Great Northern's conduct falls within the CPPA's prohibitions. Nevertheless, Great Northern makes the following arguments.

First, Great Northern alleges that they did not have fair notice of the claim against them because the Hirsches did not cite a *specific* provision of the CPPA that was violated. *See* Mot. at 21 (citing *Karim-Panahi v. United States Congress*, 105 Fed. App'x 270, 274 (D.C. Cir. 2004)). This is absurd. The Hirsches' Counterclaim alleges the following:

> Under the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq*., an insurer may not represent that its services have characteristics that they do not have; represent that services are of particular standard, quality, grade, style, or model, if in fact they are of another; misrepresent as to a material fact which has a tendency to mislead; fail to state a material fact if such failure tends to mislead; or misrepresent the authority of a representative or agent to negotiate the final terms of a transaction.

Counterclaim ¶ 83.  Had Great Northern compared the language of the Hirsches' Counterclaim with the language of the CPPA, it would have seen that the CPPA states:

> It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:
>
> > (a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;
> >
> > (d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;
> >
> > (e) misrepresent as to a material fact which has a tendency to mislead;
> >
> > (f) fail to state a material fact if such failure tends to mislead;
> >
> > (v) misrepresent the authority of a salesman, representative or agent to negotiate the final terms of a transaction.

D.C. Stat. § 28-3904(a), (d), (e), (f), (v).  Thus, any argument that, under the liberal rules of notice pleading set forth in Federal Rule of Civil Procedure 8(a)(2), the Hirsches' Counterclaim was not sufficiently detailed to put Great Northern on notice of the claim against it is barely credible.  *See, e.g., Swierkiewicz*, 534 U.S. at 512 ("Federal Rule of Civil Procedure 8(a)(2) . . . provides that a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'  Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'  *Conley v. Gibson*, 355 U.S. 41, 47, (1957). This simplified notice pleading standard relies on liberal discovery rules

and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.").[6]

Second, Great Northern alleges that the Hirsches have failed to adequately allege monetary damages. Again, this is untrue. As is alleged in the Hirsches' Counterclaim, they have been damaged by paying more than $71,000 in premiums for a policy Great Northern now refuses to honor, as well as suffering from emotional distress and medical issues arising from this distress. Moreover, the Hirsches have been forced to incur the cost of this suit and attorneys' fees. It is well-established that these are compensable injuries under the CPPA. For example, in *Osbourne v. Capital City Mortgage Corp.*, 667 A.2d 1321, 1329-30 (D.C. 1995), the District of Columbia Court of Appeals reversed the trial court's grant of summary judgment on the plaintiff's CPPA claim, finding that the plaintiffs had alleged sufficient injury to allow the case to go to the jury where the plaintiffs claimed that the defendant's conduct had caused them "financial and economic embarrassment, including damage to credit, incurring of advice and attorney fees, as well as the personal embarrassment of the advertisement of their property for sale." *Id.* at 1327. Indeed, the very case upon which Great Northern relies for its argument about the damages element of a CPPA claim in fact supports the Hirsches' position. In that case, the D.C. Circuit reversed and remanded the lower court's finding that the plaintiff "did not suffer damages sufficient to sustain an action for a violation of the Act." *Athridge v. Aetna Cas. & Sur. Co.*, 351 F.3d 1166, 1176 (D.C. Cir. 2003).

Third, Great Northern argues that the Hirsches' allegations regarding its statements and conduct are not actionable under the CPPA. Again, this is untrue. With regard to Great

---

[6] Great Northern's argument that the Hirsches' claim was not pled with sufficient "particularity," *see* Mot. at 22, fails for the same reasons. However, if the Court disagrees, it should allow the Hirsches to amend their Counterclaim, as even the case relied upon by Great Northern so holds. *See Witherspoon v. Philip Morris Inc.*, 964 F. Supp. 455, 464 (D.D.C. 1997).

Northern's false advertising and promotional material received and relied upon by the Hirsches, this is a classic cause of action under the CPPA. The Hirsches have pled that Great Northern advertised its claims-handling services without the intent to sell them as advertised or offered. *See, e.g., Byrd v. Jackson*, 902 A.2d 778, 782 (D.C. 2006) (upholding treble and punitive damages award for violations of the CPPA where the evidence showed that the defendant "advertise[d]" services "without the intent . . . to sell them as advertised or offered" (citing D.C. Stat. § 28-3904(h))). This is sufficient to state a claim under the CPPA. *See Cooper*, 206 F. Supp. at 36 ("Although they have not proven [their CPPA claims], the plaintiffs are entitled to offer evidence at a later time to support these claims. Consequently, the court denies [the] motion to dismiss." (internal citation omitted)).

With regard to Great Northern's misrepresentations and omissions under the insurance contract itself, District of Columbia law is crystal clear that an insurer's misrepresentations and omissions to a policyholder are actionable under the CPPA. *See Athridge*, 351 F.3d at 1176 (holding that insurance contract was "trade practice" within meaning of CPPA for purpose of claim that insurer made misrepresentations and omissions under the Act); *see also Wells v. Allstate Ins. Co.,* 210 F.R.D. 1 (D.D.C. 2002) (upholding class action by policyholder alleging that insurer failed to disclose material facts about its claims-handling processes in violation of the CPPA). Great Northern therefore resorts to arguing that it did not make any misrepresentations or omissions because the "Fraud and Concealment" section of the policy put the Hirsches on notice that any payments made to them could be recovered. But, as discussed earlier, the "Fraud and Concealment" section of the policy states no such thing. Rather, it states that the policy may be voided *only* in the event a covered person "intentionally concealed or misrepresented any material fact relating to this policy before or after a loss." The Hirsches have

26

not intentionally concealed or misrepresented any material fact relating to their policy either before or after their loss. *See supra* note 5. Indeed, even Great Northern's Complaint does not allege fraud against the Hirsches. In any event, Great Northern's argument is simply another example of its asking the Court to construe the facts in its favor when such facts must be construed in favor of the Hirsches. *See Wells*, 210 F.R.D. at 9 (noting that in a CPPA claim for misrepresentation against an insurance company, "[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable [person] might have considered them important in making this decision"). Consequently, the Hirsches have stated a claim under the CPPA may pursue actual as well as punitive and treble damages.

## VI. The Hirsches Are Entitled to Punitive Damages for Counts I, II, III, and V of Their Counterclaim.

Finally, Great Northern argues that the Court should dismiss the Hirsches' claim for punitive damages for Counts I, II, III, and V of their Counterclaim. Relying on general statements about the "disfavored" nature of punitive damages, Great Northern argues that it has done nothing that could be construed as "egregious or outrageous" conduct. Great Northern ignores the applicable precedent demonstrating that its conduct is exactly the type to give rise to punitive damages. In *Washington v. Group Hospitalization, Inc.*, 585 F. Supp. 517 (D.D.C. 1984), the Court explained the kind of conduct that will support entry of punitive damages against an insurer:

> Because an insurer has additional obligations to its insured which subject it to more stringent standards of conduct than those normally imposed on parties to a contract, it may be found liable for punitive damages even if it was not motivated by actual malice or even if its conduct did not amount to fraud or misrepresentation. Rather, an insurer may be liable for punitive damages if its actions were oppressive or in willful and wanton disregard of the insured's rights.

*Id.* at 521 (internal quotations marks, alternation, and citation omitted).  Thus, in ruling on the insurer's motion to dismiss, the court concluded that the policyholder's allegations regarding the insurer's "refusal to investigate plaintiff's claim and its subsequent refusal to pay back any benefits under the policy for some time could be considered by a finder of facts to be sufficiently oppressive or reckless to support an award for punitive damages" and therefore denied the insurer's motion to dismiss.  *Id.* at 522.

Similarly, in *Central Armature Works, Inc. v. American Motorists Insurance Co*., 520 F. Supp. 283, 292 (D.D.C. 1981), the district court held that an insurer could be liable for punitive damages "even if its conduct did not amount to fraud or misrepresentation" because of the nature of the relationship between the insured and the insured.  *Id*. at 292; *see also American Registry of Pathology v. Ohio Cas. Ins. Co.*, 401 F. Supp. 2d 75, 79-80 (D.D.C. 2005) (discussing availability of punitive damages for breach of the duty of good faith and fair dealing by an insurance company and holding that at the early stage of the pleadings it would not foreclose any claim for punitive damages); *Wagman*, 457 A.2d at 404 ("Although punitive damages generally are not recoverable for breach of contract, this rule is inapplicable if there exists an independent fiduciary relationship between the parties.").

It is clear that the Hirsches have pled adequate facts under these standards to show that Great Northern may be held liable for punitive damages for its breaches of fiduciary duty, breach of the duty of good faith and fair dealing,[7] intentional infliction of emotional distress, and

---

[7] Great Northern cites *Sere v. Group Hospitalization, Inc*., 443 A.2d 33, 37 (D.C. 1982), for its argument that punitive damages are not available for a breach of the duty of good faith and fair dealing.  However, as *Sere* stated, such damages are available where the breach "merges with and assumes the character of a willful tort."  *Id.*  Here, Great Northern's breach of the duty of good faith and fair dealing has merged with, and assumed the character of, a willful tort as Great Northern has intentionally inflicted emotional distress on their insureds, as pled in the Hirsches' Counterclaim.

violations of the CPPA.[8]  The Hirsches have alleged facts showing that Great Northern acted

oppressively, willfully, and in reckless disregard of the Hirsches' rights in the following manner:

- By engaging in duplicative claim investigation and/or unreasonably delaying the alleged "investigation" forming the basis of Great Northern's complaint until after the Hirsches' submitted claim had already been paid and the moneys spent by the Hirsches to repair their home and repair or replace its contents;

- By unreasonably delaying its denial of coverage to the Hirsches until after the claim had already been paid and the moneys spent by the Hirsches to repair their home and repair or replace its contents;

- By requiring the Hirsches to submit both a formal proof of loss form and subsequent verification after Great Northern had already paid their claim and that would simply duplicate information Great Northern already had;

- By seeking to void the Hirsch's insurance policy for reasons that are arbitrary and capricious;

- By failing to acknowledge and act reasonably promptly upon communications from Mr. Hirsch with respect to the claim for coverage;

- By failing to acknowledge and act reasonably promptly upon communications from Mr. Hirsch inviting Great Northern to inspect the original documents in Mr. Hirsch's files and to reconcile receipts for any work Great Northern believed had been duplicated;

- By failing to implement reasonable standards for the prompt investigation of claims and instead waiting until the claim had already been paid to assert that it was beginning an "investigation" into the claim;

- By seeking to void coverage of the Hirsches' claim when a reasonable investigation had already revealed that the Hirsches' claim is valid;

- By failing to reserve any rights or to deny coverage of the Hirsches' claims within a reasonable time after having completed its investigation and instead waiting until almost a year after issuing its last check, essentially paying the claim in full, before attempting to deny coverage under the Hirsches' policy;

- By failing to attempt in good faith to effectuate prompt, fair, and equitable settlement of the Hirsches' claim, for which Great Northern's liability had become abundantly clear;

---

[8] The availability of punitive and treble damages for unfair trade practices is statutorily mandated by the CPPA.  *See* D.C. Stat. § 28-3905(k)(1).

- By attempting to void all payments on the Hirsches' claim when a reasonable person would believe the Hirsches were entitled to payment by reference to written or printed advertising material accompanying or made part of the Hirsches' application or policy;

- By sending an investigator to the Hirsches' home who humiliated and disparaged Mr. Hirsch;

- By sending the Hirsches threatening letters, repeatedly inquiring about items that are not material to the Hirsches' claim;

- By representing that its claims-handling service had characteristics that it does not have, such as "promptness, fairness, and integrity in settling claims," that its claims services would be "no quibble" and "hassle-free," and that it possessed a "claim service that is world class," when the Hirsches relied on these representations to their detriment;

- By representing that its claims-handling service was of a particular standard (*i.e.* "world class," "no quibble," and "hassle-free") when in fact it is not and the Hirsches relied on these representations to their detriment;

- By failing to state and inform the Hirsches of the material fact that its payments of $280,065.39 were not in settlement of the Hirsches' claim, thereby misleading the Hirsches and causing them to rely to their detriment on Great Northern in believing that they could use the payments immediately to repair their home and repair or replace its contents;

- By failing to state and inform the Hirsches of the material fact that it was reserving its rights and/or planning to deny coverage and seek to recover its payments of $280,065.39 to the Hirsches, thereby misleading the Hirsches and causing them to rely to their detriment on Great Northern in believing that they could use the payments immediately to repair their home and repair or replace its contents;

- By failing to state and inform the Hirsches of the material fact that it reserved the right to deny coverage for reasons other than those set forth in the Hirsches' policy, thereby misleading the Hirsches and causing them to rely to their detriment on Great Northern in believing that the terms of their policy set forth the only circumstances under which coverage could be voided or denied;

- By failing to state the material fact that it reserved the right to deny coverage to the Hirsches almost one year after making payments to the Hirsches in settlement of their claim, thereby misleading the Hirsches and causing them to rely to their detriment on Great Northern in believing that the payments they received from Great Northern were in settlement of their claim and could be used immediately to repair their home and repair or replace its contents;

- By misrepresenting the authority of its claims handler as its representative with authority to settle the Hirsches' claims when in fact Great Northern now seeks to deny coverage almost a year after the claims handler had settled the Hirsches' claim.

*See* Counterclaim ¶¶ 60, 69, 76, 86.

Thus, this case is easily distinguishable from those cited by Great Northern where the insurer simply breached the terms of the insurance contract and did not engage in deceptive, oppressive, or reckless conduct.  See Mot. at 26 (citing cases).  None of the cases relied upon by Great Northern involved facts such as those alleged here where a vulnerable policyholder relied on representations by his insurer that payments were made in settlement of his claim, and the insurer then subsequently attempted to void the insurance policy and recover the payments, harassing the policyholder over non-material items that were irrelevant to the claim payments.  Rather, each of the cases cited by Great Northern simply dealt with an insured's refusal to honor a provision of the contract.  *See State Farm Mut. Auto. Ins. Co. v. Hoang*, 682 A.2d 202, 209 (D.C. 1996) (upholding dismissal of punitive damages claim where plaintiff's claim was "essentially for breach of contract" and plaintiff did not plead that insurer had denied his claim for benefits in bad faith); *O'Connell v. Home Ins. Co.*, No. 88-3523, 1990 WL 137386, at *4-5 (D.D.C. Sept. 10, 1990) (punitive damages not appropriate where the facts pled showed only a genuine dispute about an ambiguous term in the insurance contract); *Fireman's Fund*, 480 F. Supp. 2d at 15 (punitive damages not available in "routine breach-of-contract action" where insurer did nothing "coercive" or "deceptive" to insured).   That is not the situation here, where the facts alleged by the Hirsches are enough to state a claim for punitive damages under District of Columbia law.

## <u>CONCLUSION</u>

For the foregoing reasons, Great Northern's motion to dismiss Counts I through V of the Hirsches' Counterclaim should be denied.

Dated: February 13, 2008                                          Respectfully submitted,

                                                                     /s/ Lorelie S. Masters
                                                                 Lorelie S. Masters
                                                                 D.C. Bar No. 358686
                                                                 Jessica Ring Amunson
                                                                 D.C. Bar No. 497223
                                                                 JENNER & BLOCK, LLP
                                                                 601 13th Street, NW, Suite 1200
                                                                 Washington, DC  20005
                                                                 Telephone:  (202) 639-6000
                                                                 Facsimile:  (202) 661-4993
                                                                 E-mail:  lmasters@jenner.com
                                                                          jamunson@jenner.com

                                                                 *Attorneys for Joel and Carol Hirsch*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of February, 2008, I caused the foregoing to be filed using the Court's Electronic Case Filing (ECF) system, which will automatically send notice of such filing to counsel of record in this case.

____/s/ Jessica Ring Amunson_____
Jessica Ring Amunson
D.C. Bar No. 497223
JENNER & BLOCK, LLP
601 13th Street, NW, Suite 1200 South
Washington, DC  20005
Telephone:  (202) 639-6000
Facsimile:  (202) 661-4993
E-mail:  jamunson@jenner.com

***Attorney for Joel and Carol Hirsch***
